## STATE ex rel. BURPEE vs. BURTON.

PUBLIC SCHOOLS. *(1, 2) Authority of teacher in charge. (3) Respect paid by the court to decisions of state superintendent. (4) Use of* mandamus *to correct wrongs in school discipline.*

1. While the principal or teacher in charge of a public school is subordinate to the school board or board of education of his district or city, and must enforce regulations adopted by it for the government of the school, and execute its lawful orders in that behalf, yet, in matters concerning which the board has remained silent, he has authority, as *in loco parentis*, to enforce obedience to his lawful commands, subordination, civil deportment, respect for the rights of other pupils, and all obligations inherent in every school system and constituting the common law of the school, which every pupil is presumed to know.

2. In a proper case, and where not deprived of the power by affirmative action of the board, such teacher has the inherent power to suspend a pupil from the privileges of the school; though such suspension should be promptly reported to the board, with the reasons therefor.

3. The decisions of the department of public instruction upon questions within its jurisdiction are entitled to great weight, and should not be overruled by the courts unless clearly contrary to law.

4. Whether *mandamus* should issue in any case to the teacher in charge of a public school, and whether, after the proper school board has confirmed the act of the teacher complained of, the writ, if issued, must not run to such board, *quære.*

APPEAL from the Circuit Court for *Rock* County.

The relator is a resident of the city of Janesville, and the defendant is the principal in charge of the high school (so called) in that city.

The relator presented his affidavit to the circuit court, in which he stated and charged, in substance, that on the 13th of December, 1877, the defendant, without lawful authority or right and without legal or reasonable excuse, and contrary to the known wishes of the relator, suspended and expelled from the said school the relator's son, George, aged about sixteen years, who had theretofore been a pupil therein; that the defendant has refused, and still does refuse, to admit the said George as a pupil in the school; that such refusal is in violation of law and of any authority vested in the defendant,

which refusal is greatly to the injury and damage of the relator and George; and that they both made demand of the defendant, on the 19th of the same month, that he readmit George as a pupil in the school, but the defendant refused to comply with such demand.

It is further stated in the affidavit, that George is a fit and proper person to be received as a pupil, and that there is ample room for him in the school, and ample facilities for his retention and accommodation as a pupil; also, that the specific cause for the suspension is unknown to the relator, except that the defendant informed him that it was " general bad conduct " of his son. The relator denies the truth of the charge, and avers that the conduct of his son did not warrant his suspension or justify the defendant in his refusal to re-admit him.

On this affidavit (which stands for a petition or relation), the court awarded an alternative writ of *mandamus*, command-ing the defendant forthwith to admit and receive·George as a pupil in said school, or show cause to the contrary on a day therein named. The writ was duly issued and served on the defendant, and is dated the 19th of the same month.

To this writ the defendant made return, in which he admits that he suspended George from the privileges of the school for continued misconduct, persisted in by him after patient, kind and friendly advice by his teachers to abstain therefrom, to the great injury and demoralization of his class and other pupils in the school. The return contains numerous specifi-cations of disobedient and disorderly conduct, which it is un-necessary to state in detail. The action of the defendant after the suspension of George, and the terms on which he can obtain readmission to the school, are stated.in the return as follows:

" That his suspension from the privileges of the said high school was reported to the board of education of the city of Janesville, on the said 13th day of December, 1877, in writing, specifying the name of the said ¯George L. Burpee, the pupil suspended, the character and date of the offenses for which the

suspension was made, the date of the suspension, and other relevant information relating to the said suspension; and the said board of education did, on the said 13th day of December, 1877, and on the 20th day of December, 1877, and continually since said suspension, approve, ratify and sanction the same, and order said suspension continued.

"That on the same day of said suspension, this defendant did also give immediate notice of such suspension to *Austin E. Burpee,* the parent and father of the said George L. Burpee, the said suspended pupil, specifying the name of the suspended pupil, the character and date of the offenses for which he was suspended, the date of suspension, and other relevant information in relation to such suspension.   ·   ·   ·

" That had the said George L. Burpee shown any desire or disposition to comply with the rules and regulations aforesaid, adopted by said board of education, he would not have been suspended.

" And this defendant avers, upon information and belief, that when the said George L. Burpee manifests and expresses regret for his aforesaid misconduct and behavior as a pupil of said high school, and makes a sincere promise of future good conduct, and by complying with the reasonable rules adopted by said board of education, he can be readmitted as a pupil in said high school; and this defendant, as teacher and superintendent of the same, will, on such terms, be glad to have him readmitted as a pupil in said high school.   But his readmission without any excuse for his past misconduct aforesaid, or any promise for any better or different behavior in the future, will be of no benefit to him, but an injury, and will tend directly and speedily to the subversion of all rules and regulations for the good order and government of said school, and to the utter destruction of the high school itself."

The relator interposed the following demurrer to the return:

" The relator demurs to the return and answer of said *R. W. Burton* to the alternative writ of *mandamus,* for insufficiency in not stating facts sufficient to show that the relator

is not entitled to the peremptory writ prayed for.· Also, that said return is defective and insufficient in not setting forth the rules therein referred to, and in not stating the time when said rules were violated, and how and wherein violated, and also in not stating that said several rules were and each was known to said George L. Burpee, before the alleged violation of the same. Also, that said return is not verified. Also, that it does not appear, by said return or· answer, that the expulsion of said Burpee was at all necessary to the good order and government of said school."

After argument of the demurrer, the court made an order that the same be ·" sustained, with leave to issue a peremptory *mandamus* according to the prayer of the petition."

All of the proceedings from the filing of the return to the final order, inclusive, were had on the 22d of December, 1877.

The defendant appealed from the above order.

For the appellant, there was a brief by *Bennett & Sale*, and oral argument by *Mr. Bennett.* They contended, 1. ·That the suspension of the relator's son for the causes alleged was within the discretion of the board of education of the city of Janesville. Charter of Janesville (ch. 474, P. & L. Laws of 1866), ch. VIII, secs. 1, 2, 3, 7; *Hodgkins v. Rockport*, 105 Mass., 475; *Spiller v. Woburn*, 12 Allen, 127; *Sherman v. Charlestown*, 8 Cush., 160; *Guernsey v. Pitkin*, 32 Vt., 224; *Ferriter v. Tyler*, 48 id., 444; *Donahoe v. Richards*, 38 Me., 379; *Stephenson v. Hall*, 14 Barb., 222; *Sewell v. Board of Education,* 29 Ohio St., 89; *Burdick v. Babcock*, 31 Iowa, 562; *Morrow v. Wood*, 35 Wis., 59. 2. That the writ of *mandamus* could not properly issue to the present respondent, but should be addressed to the board of education, which alone has power to readmit. P. & L. Laws of 1866, ch. 474, p. 1174, sec. 8; High on Ex. Leg. Rem., 4, § 1; 3 Bl. Com., Cooley's ed., 110 and notes; *State ex rel. Carpenter v. Supervisors*, 21 Wis., 280; *People v. Board of Education*, 18 Mich., 400; *People v. School Officers*, 18 Abb. Pr., 165, and note.

For the respondent, there was a brief by *Winans & McElroy,*

and oral argument by *Mr. Winans*. They contended, among other things, 1. That the right of residents of this state of the proper age to instruction in the public schools is one secured by the constitution. Art. X, secs. 2, 3. 2. That under the general statute, the proper school board alone has the power to suspend or expel, and this only after a due *examination*, and after giving the persons affected an opportunity to be heard. Tay. Stats., 557, § 54. 3. That by the charter of Janesville, the board of education has charge and superintendence of the schools of that city, with power to make rules for their government (P. & L. Laws of 1866, ch. 474, sub-ch. VIII, sec. 8, subd. 4); that the charter is silent as to any power of suspension or expulsion; that at least the teacher, who is a mere servant of the board, has no such power; and that the power of the board in that respect cannot be delegated. 12 Wis., 685; 35 -id., 59; 8 Cush., 164. 4. That the appellant's return was insufficient, because, while it admitted the suspension and refusal to readmit, it failed to show any authority in the appellant to suspend; while it alleged an approval by the board of the suspension, it failed to state facts showing such approval, or in what manner it was given, or that the board examined the case or granted any hearing to the party expelled; while it alleged, in general terms, violations of the rules of the school, it failed to state precisely what those rules were, or that they were established by the board of education, or were ever reduced to writing, or published in any manner, or that the pupil expelled was ever informed of them, and also failed to specify the *times* when the alleged violations occurred. High on Ex. Leg. Rem., §§ 467, 472. 5. That the writ was properly directed to the teacher. *People v. Throop*, 12 Wend., 187; 2 Johns. Cas., 217, 264–5; 2 Crary's Pr., 65–71.

LYON, J. The power of the board of education to suspend a pupil from the privileges of the schools under its charge, and even to expel him, for persistent misconduct, is freely conceded by the learned counsel for the relator. That the acts

of misconduct charged against the relator's son in the defendant's return to the alternative writ of *mandamus* furnish sufficient grounds for suspending him, we cannot doubt. And moreover, if he was lawfully suspended, no sufficient grounds for restoration are stated in the affidavit for the writ. Indeed, the return shows affirmatively that he has not placed himself in a position to entitle him to restoration.

On the argument of the appeal, counsel informed us that the learned circuit judge held that the defendant has no power to suspend a pupil for any cause, such power being vested by law exclusively in the board of education, and that the demurrer to the return was sustained on that ground. Whether the defendant has such power of suspension, and, if so, whether it was properly exercised in the present case, are the controlling questions to be determined on this appeal.

While the principal or teacher in charge of a public school is subordinate to the school board or board of education of his district or city, and must enforce rules and regulations adopted by the board for the government of the school, and execute all its lawful orders in that behalf, he does not derive all his power and authority in the school and over his pupils from the affirmative action of the board. He stands for the time being *in loco parentis* to his pupils, and because of that relation he must necessarily exercise authority over them in many things concerning which the board may have remained silent. In the school, as in the family, there exist on the part of the pupils the obligations of obedience to lawful commands, subordination, civil deportment, respect for the rights of other pupils and fidelity to duty. These obligations are inherent in any proper school system, and constitute, so to speak, the common law of the school. Every pupil is presumed to know this law, and is subject to it, whether it has or has not been reënacted by the district board in the form of written rules and regulations. Indeed it would seem impossible to frame rules which would cover all cases of insubordination and all acts of vicious tendency which the teacher is liable to encounter daily and hourly.

The teacher is responsible for the discipline of his school, and for the progress, conduct and deportment of his pupils. It is his imperative duty to maintain good order, and to require of his pupils a faithful performance of their duties. If he fails to do so, he is unfit for his position. To enable him to discharge these duties effectually, he must necessarily have the power to enforce prompt obedience to his lawful commands. For this reason the law gives him the power, in proper cases, to inflict corporal punishment upon refractory pupils. But there are cases of misconduct for which such punishment is an inadequate remedy. If the offender is incorrigible, suspension or expulsion is the only adequate remedy. In general, no doubt, the teacher should report a case of that kind to the proper board for its action in the first instance, if no delay will necessarily result from that course prejudicial to the best interests of the school. But the conduct of the recusant pupil may be such that his presence in the school for a day or an hour may be disastrous to the discipline of the school, and even to the morals of the other pupils. In such a case, it seems absolutely essential to the welfare of the school that the teacher should have the power to suspend the offender at once from the privileges of the school; and he must necessarily decide for himself whether the case requires that remedy. If he suspends the pupil, he should promptly report his action and his reasons therefor, to the proper board. It will seldom be necessary for the teacher in charge of a district school to exercise this power, because usually he can communicate readily with the district board, and obtain the direction and order of the board in the matter. But where the government of a public school is vested in a board of education (as in the present case) with a more numerous membership than district boards, and which holds stated meetings for the transaction of business, the facilities for speedy communication with the board may be greatly decreased, and more time must usually elapse before the board can act upon a complaint of the teacher. In those schools, the occasions which require the action of the teacher in the first instance will occur more frequently than in the

district schools. We conclude, therefore, that the teacher has, in a proper case, the inherent power to suspend a pupil from the privileges of his school, unless he has been deprived of the power by the affirmative action of the proper board.

In the present case, we think that the acts of misconduct alleged against the relator's son in the return to the alternative writ, were of a character which justified the defendant in suspending him temporarily, without the previous order of the board of education. Although, for the purposes of this appeal, the specifications of misconduct contained in the return are admitted by the demurrer, we abstain from setting them out here, because it might be unjust to the relator and his son to spread those specifications upon our records before there has been an opportunity to controvert them.

It is believed that the conclusions we have reached in this case are in accord with the uniform rulings of the department of public instruction on kindred questions. The decisions by that department of questions within its jurisdiction are entitled to great weight, and should never be overruled by the courts unless clearly contrary to law.

Certain special grounds of demurrer are assigned, but we do not deem it necessary to pass upon them. If any of them are well assigned, leave should have been given to amend the return in the particulars wherein it is defective. Such leave would have been given, doubtless, had the ruling of the circuit court been based upon the special grounds assigned.

It follows from the foregoing views that the circuit court erred in sustaining the demurrer to the return.

We have grave doubts whether the writ of *mandamus* can issue in any case to the teacher in charge of a public school to compel him to reinstate a suspended pupil, but have concluded to leave that question undetermined on this appeal. We, however, suggest to counsel for the relator the questions whether, in case the averment in the return is true, that the board of education has ratified and confirmed the act complained of, the whole matter has not passed beyond the control of the defend-

ant; and whether the writ can now go to any person or body other than the board.

We may be permitted to add, in conclusion, that our system of public schools necessarily involves the most delicate relations between parents and children on one side, and the school authorities on the other, and controversies must frequently arise growing out of the enforcement of school discipline. These controversies, relating, as they usually do, to the control, management and correction of pupils, are apt to have their origin in wounded parental feelings, and are frequently prosecuted with much bitterness. It is cause for congratulation that so few of these controversies appear in the courts. Most of them are determined by the superintendent of public instruction, whose decisions are almost invariably acquiesced in. This result is due to the ability and good judgment of the gentlemen who have severally filled that high office for a long series of years; aided, as we doubt not many of them have been, by the valuable counsels of the present learned and able assistant superintendent, who has long served in that position greatly to the benefit of the state. We regret that this unfortunate controversy could not have been adjusted in the same manner.

*By the Court.*—The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.

RYAN, C. J., took no part.