## M. F. TEETER v. HORNER MILITARY SCHOOL.

(Filed 13 May, 1914.)

**1. Schools — Rules and Regulations — Discipline — Agreement Implied.**

It is necessary to the well-being of a school and the pupils attending it that a proper discipline be maintained, and the parent of a pupil entering it impliedly agrees that he will submit to all reasonable rules and regulations promulgated and enforced for that purpose.

**2. Same—Expulsion.**

The principal of a private school has the power to enforce all reasonable rules and regulations thereof made for the maintenance of a proper discipline, by punishment or expulsion of the pupil offending when this power is not maliciously or arbitrarily exercised by him.

**3. Same—Payment in Advance.**

Rules of a private school requiring that payment be made in advance for the full term upon entering a pupil, and that upon expulsion of the pupil during the term no repayment would be made for the unexpired part of the term, are reasonable and are enforcible in the proper exercise thereof; and this applies where the parent has been indulged or given credit as to part of the advance payment.

**4. Same—Courts—Trials—Evidence—Verdict Set Aside.**

In this case it appeared from the evidence that the plaintiff entered his boy in the defendant's school with knowledge that if the pupil violated the rules of the school relative to its discipline, he would be expelled; that the pupil was expelled for repeated misconduct and violation of the rules and for insubordination to the principal. There was no evidence that the principal acted arbitrarily or otherwise than for the best interest of the school: *Held,* no error for the trial judge to set aside a verdict by which the plaintiff recovered proportionately the money he had paid for the unexpired part of the school term.

APPEAL by plaintiff from *Harding, J.,* at January Term, 1914, of CABARRUS.

This action was brought to recover $70, money paid by the plaintiff to the defendant for the tuition and expenses of his

son at the latter's school.   The boy was entered 1 January, 1913, for the remainder of that scholastic year, and returned for the Fall Term, 1913, the first of September.   Defendant, early in September, sent a bill for the whole amount of tuition and expenses for the term, towit, $185.   Plaintiff paid $90 and failed to pay the balance due.   The boy was expelled for repeated misconduct and violation of the rules and regulations of the school, about 1 October, 1913.   This suit was brought to recover the amount thus paid.

Defendant denied liability and set up a counterclaim for balance of the bill, less some deductions, which was $80.56, alleging, and Mr. J. C. Horner, principal of the school, testifying, that it was all payable in advance.

Plaintiff testified: "When I received the bill for a half-year's payment, I knew the money would be forfeited on expulsion."

Mr. Horner testified: "On page 11 of the catalogue, on 'Character,' I find: 'We do not want vicious or habitually insubordinate boys, and if such succeed in entering, they will be dismissed.   Applicants are accepted with the express understanding that they will submit to our authority in every respect.   A boy whose conduct is hurtful to the scholarship and morals of his associates will be expelled.   The discipline is not severe, but firm and decided, and no boy will be retained who does not cheerfully comply with the rules and regulations, or whose influence is known to be injurious to the morals and scholarship of his fellows.   The freedom of college life is not given, but the aim of our discipline is to teach a boy to be self-governed.   The discipline at Horner's appeals to a boy's sense of manliness and teaches him, first, self-control and obedience to order, and in turn to control and command others.   Any cadet who shall disobey a command of the principal, or of any professor, instructor, or other superior officer, or behave himself in a refractory or disrespectful manner, shall be expelled, or otherwise punished.'   In general, these rules have been required to be kept hanging in the rooms.   In the conduct of our school we enforce our rules in the catalogue as to payments to

be made in advance. I suppose for fifteen or twenty years I have been collecting a half-year in advance. That was stated in the catalogue. About ten years ago we changed the catalogue, and since that time we enforce the rule. I consider that the strongest discipline in the school is for a boy to have his money forfeited. It is a strong discipline over him. I have enforced the rule rigidly, when a boy is expelled, that there is no deduction. We have always done that." He further testified that the boy had often committed serious offenses, when he notified him 'if they continued he would be expelled. "This was done at regular roll-call in the presence of the students or cadets, but I made no good impression upon him, as he repeated them afterwards and ran his demerits up from 100 to 150. When demerits ran to 100, we could either whip or expel. The boy had been whipped once." He was expelled for excessive demerits—violation of the rules. He smoked; he visited; left his room when he was required to be in it; when required in there to prepare his lessons, he would slip out; also for throwing in the assembly hall, which is a serious offense. These acts were against our rules. In ordinary practice there is no fixed amount of demerits until a student is notified. I spoke to the boy about this matter before his demerits were going up so rapidly, but he disregarded all of it. I thought his conduct was demoralizing. He wasn't preparing his lessons. I expelled him in the regular course of my school the same as I have done many times before. The bill as sent Mr. Teeter in September, 1913, was for a half-year payment for the fall term. When January came around, the bill was for the spring term." The witness also stated why the school was compelled to charge for the full term in advance, which was that "they had to make a very large outlay in the beginning for supplies and pay cash for them, the amount being about $10,000. There was much testimony to corroborate the witness.

Plaintiff testified that he did not see the catalogue. He did not say that it was not mailed to him and received at his home, but denied merely that he had seen it, although there was circumstantial evidence that it had reached him and he had the

opportunity to read it. "I never laid my eyes on this catalogue, to my knowledge. It might have come in the mail to my home. The family might have brought it down and I might have looked at it and thought it was some old circular, and destroyed it. I usually do so. I never did read it. When I received the bill for a half-year's payment, I knew money would be forfeited on expulsion." He also stated that he was not notified by Mr. Horner that the money would be forfeited if his son misbehaved, nor did he agree that the money should be retained if the boy was expelled.

Under the charge of the court, there was a verdict for the plaintiff, which the judge set aside upon the following grounds:

1. That he had refused the defendant's sixth prayer for instructions as follows: "If the jury believe the evidence, they should answer the first issue 'Nothing' and the second issue for the half annual charges for board, tuition, etc., less the $90 paid by the plaintiff, towit, $80.56."

2. That he erred in leaving it to the jury to determine "whether or not there was malice or viciousness on the part of defendant, and whether it was prompted by some other purpose than the enforcement of the regulations and good government of the school in expelling the boy of the plaintiff. There being no evidence as to what were the rules and regulations of the defendant and its motives for expelling the boy of the plaintiff for violation of the same, other than testified to by defendant's witnesses, and the catalogue and cadet regulations of the defendant's school introduced by defendant, the court is of the opinion, upon the undisputed facts, that said rules and regulations were reasonable, and that the defendant was actuated by no other motive, in expelling the boy of the plaintiff, than the enforcement of the regulations and good government of the school."

The verdict was set aside for error in law, as above set forth, and plaintiff appealed.

*Morrison H. Caldwell and L. T. Hartsell for plaintiff.*
*Maxwell & Keerans and J. W. Hutchison for defendant.*

TEETER *v.* MILITARY SCHOOL.

WALKER, J., after stating the case: This was a military school, and in the "Horner Cadet Regulations" it is provided that, "Any cadet who shall disobey the command of the principal or of any professor, instructor, or other superior officer, or behave himself in a refractory or disrespectful manner, shall be expelled, or otherwise punished," and in the Horner School catalogue is the following provision: "The discipline is not severe, but firm and decided, and no boy will be retained who does not cheerfully comply with the rules and regulations, or whose influence is known to be injurious to the morals and scholarship of his fellows." There was also a rule that if a pupil received more than 100 demerits for misconduct, he would be expelled or thrashed, at the discretion of the principal. There is ample evidence in the case to show that this boy misbehaved himself frequently, ran his demerits up rapidly to 150, after he had been duly warned that if they reached 100 he would be expelled, and that he was generally unruly and refractory. The principal seems to have exercised forbearance until it ceased to be a virtue, and the boy's conduct had become so bad that it was demoralizing in its effect upon the school. Besides his personal misbehaviors, he was backward in his lessons and receiving no benefit himself, but doing much injury to others by his example. If the principal had longer submitted to this gross breach of school discipline, amounting almost to defiant insubordination, it may have done incalculable harm to the school. The defendant had the undoubted power to adopt and enforce suitable rules and regulations for the government and management of the school. 25 A. and E. Enc. of Law (2 Ed.), 27, 28. They should be reasonable and enforced for the purpose contemplated, and not maliciously or arbitrarily. If need be, punishment for the infraction of the rules may extend to the dismissal of the pupil who violates them. 35 Cyc., 1140, 1141. The conduct of the recreant pupil may be such that his continued presence in the school for a day, or an hour, may be disastrous to its proper discipline, and even to the morals of his fellows, and to permit him to "run the school," instead of obeying its rules and submitting himself to the

authority of his superiors, would produce insubordination, which in its turn would soon disorganize it. In such a case it seems imperative and essential to the welfare of the school that the power should reside in the teacher to suspend the offender at once from its privileges, and he must necessarily decide for himself whether the case requires that remedy, unless some other method is provided for that purpose. This doctrine was clearly treated and formulated by the Court in *S. ex rel. Burpee v. Burton,* 45 Wis., 150, where *Judge Lyon* said: "In the school, as in the family, there exist on the part of the pupils the obligations of obedience to lawful commands, subordination, civil deportment, respect for the rights of other pupils, and fidelity to duty. These obligations are inherent in any proper school system, and constitute, so to speak, the common law of the school. Every pupil is presumed to know this law, and is subject to it, whether it has or has not been reenacted by the district board in the form of written rules and regulations. Indeed, it would seem impossible to frame rules which would cover all cases of insubordination and all acts of vicious tendency which the teacher is liable to encounter daily and hourly. The teacher is responsible for the discipline of his school, and for the progress, conduct, and deportment of his pupils. It is his imperative duty to maintain good order, and to require of his pupils a faithful performance of their duties. If he fails to do so, he is unfit for his position. To enable him to discharge these duties effectually, he must necessarily have the power to enforce prompt obedience to his lawful commands. For this reason the law gives him the power, in proper cases, to inflict corporal punishment upon refractory pupils. But there are cases of misconduct for which such punishment is an inadequate remedy. If the offender is incorrigible, suspension or expulsion is the only adequate remedy." The Court, after an able and learned discussion of the question, concluded that the teacher has, in a proper case, the inherent power to dismiss a pupil for misconduct and infractions of the rules and regulations of the school, especially when they are repeated and persistent, so that the pupil must finally yield or the teacher's au-

thority over him be destroyed. "The plaintiff, by entering the defendant's school, subjected himself to (its) reasonable rules of discipline. The power is vested in the faculties of all schools and colleges to suppress and punish unbecoming conduct." *Kabus v. Seftner,* 69 N. Y. Supp., 983.

It appeared in *Curry v. Lasell Seminary Co.,* 168 Mass., 7 (46 N. E., 110), that plaintiff had entered her daughter, as a pupil, at the defendant company's school, to be boarded, instructed, and cared for through the school year. The Court held that if there had been no express contract, the plaintiff, by placing her daughter as a pupil in the school, would have impliedly agreed that she should obey all reasonable rules and regulations of the school. This is the duty of every pupil who attends a public school, and a parent has no right to have his child remain in the school if he persists in willfully disregarding such reasonable rules. These important principles, so necessary to the proper regulation and to the welfare of our educational institutions, have been quite uniformly adopted by the courts. *Manson v. Culver Military School,* 141 Ill. App., 250; *Fessman v. Seely,* 30 S. W. Rep., 268; *Benedict Memorial School v. Bradford,* 36 S. E. (Ga.), 920; *Hodgins v. Inh. of Rockport,* 105 Mass., 475; *Vermillion v. S. ex rel. Englehardt,* 110 N. W. Rep. (Neb.), 736.

In the *Vermillion case* the Court said that the authorities are generally to the effect that where a pupil is guilty of such misconduct as to interfere with the discipline and government of the school, he may be suspended or expelled, citing many cases.

In the *Manson case, supra,* the Court held that the only requirement necessary, so far as concerns a review by a court of justice of the manager's action in dismissing a pupil, in that case, as here, a cadet, is that it shall be so unreasonable and oppressive as to warrant a conclusion that it was done maliciously, unfairly, or from some improper motive, and not for the enforcement of the school's rules and regulations and the maintenance of propert discipline.

An examination of our own cases, while they do not deal with the subject in every phase presented in this record, will show

that we have substantially approved the doctrine as already stated. It is founded upon justice and common sense, and should prevail, as in no other way could our schools be successfully conducted. *Horner & Graves v. Baker,* 74 N. C., 65; *Horner School v. Westcott,* 124 N. C., 518. These decisions clearly recognize the principle that there is an implied promise, if it is not expressed, that the pupil who has entered the school will comply with its reasonable rules and regulations, and may be dismissed, in a proper case, for failing to do so. The school authorities, it is true, may excuse or condone the offense of the pupil, but of course are not compelled to do so, and it would often be subversive of good discipline to do so, especially in the case of an incorrigible offender. The interest of every pupil is involved in the welfare of the school, and there is no reason why its success should be imperiled by the misconduct of one of them.

Our opinion is, upon the evidence we find in the record, if believed, that plaintiff is not entitled to recover any part of the money he has paid, and that defendant is entitled to recover the balance of what would have been paid by the plaintiff, but for the former's indulgence. This, we think, is settled by *Horner School v. Westcott, supra; Bingham v. Richardson,* 60 N. C., 217, and by clear implication in *Horner & Graves v. Baker, supra,* for we have the evidence in this case, which the Court, by *Chief Justice Pearson,* held was lacking in that one. The Court said in *Horner School v. Westcott, supra:* "As it was the defendant's duty to have paid this installment when it was due, and not the plaintiff's fault that it was not paid, it seems that defendant should not complain if he has to pay now." It is apparent, upon the evidence, that plaintiff was to pay the full amount in advance, and if he had paid it, as his contract required him to do, the defendant could have retained it. This being so, and as said in *Horner School v. Westcott, supra,* he is entitled to the balance of the amount due at the beginning of the session. *Fessman v. Seeley, supra.*

We have discussed the case in the light of the evidence now before us. The boy was not called and examined, and, in the absence of his evidence, there is nothing to contradict the de-

fendant's testimony as to the rules and regulations. There is strong additional evidence that plaintiff received the catalogue containing the rules. There is no evidence that defendant acted maliciously, oppressively, or unreasonably in expelling the plaintiff's son, but, on the contrary, as it now appears to us, the act was fully justified. The court was, therefore, right in setting aside the verdict and granting a new trial, and for the reasons given by the learned judge, which are set out in the record.

No error.