DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1921.

---

### W. S. McClintock, Appellee, v. Lake Forest University, Appellant.

### Gen. No. 6,818.

1. PLEADING—*who may sign affidavit of claim.* An affidavit of claim signed by the person whose name was attached to the declaration as plaintiff's attorney was sufficient, as section 55 of the Practice Act (Cahill's Ill. St. ch. 110, ¶ 55) requires the affidavit of merits to be signed by the defendant or his agent or attorney, but only provides for an affidavit.

2. PLEADING—*limitation of defendant by affidavit of merits.* *Quære*, whether a defendant is limited by his affidavit of merits, where plaintiff's affidavit of claim is defective.

3. PLEADING—*effect of conclusion of law in affidavit of merits.* The concluding statement in an affidavit of merits filed in an action to recover money advanced for tuition and board, that defendant did not owe anything for money had and received, was a mere conclusion of law, and added nothing to the affidavit, and did not enable defendant to prove any defense other than that specifically set forth.

4. PLEADING—*reliance on defense not set up in affidavit of merits.* Where, in an action against a university corporation to recover money advanced for tuition, etc., the affidavit of merits set up the defense that the contract provided that no payment should be re-

(468)

funded in case of expulsion, and that plaintiff's son was expelled because of the violation of a rule against smoking, and there was a fair inference from the evidence that the expulsion was really for the alleged breaking of the son's word of honor, defendant was precluded from taking advantage of the latter defense, where it was not set up in the affidavit of merits.

5. PLEADING—*suit on common counts for breach of contract to furnish tuition, etc., on expulsion of student.* Where a university unjustly refused to perform its contract to furnish tuition, etc., to plaintiff's son, plaintiff had the right to sue under the common counts and recover for money had and received, and was not required to file a special count setting up the contract and its breach.

6. SCHOOLS—*acceptance of application for admission as constituting a contract.* By the acceptance of an application for the admission of plaintiff's son to an academy, which stated that the applicant understood the rules and regulations for the government of the academy as published in its catalogue, a contract was concluded between plaintiff and such academy.

7. SCHOOLS—*power to adopt and enforce rules without express grant in charter.* Without express grant in its charter, an academy had the power to adopt and enforce such rules as its governing body deemed expedient for the government of the institution, and the courts may not interfere with their enforcement if they do not violate good morals or the law of the land or unless their enforcement is from malicious or improper motives other than the due enforcement of the rules and regulations of such academy.

8. SCHOOLS—*recovery of tuition and board money by father after expulsion of son for violation of rules.* In an action by a father against a university corporation, to recover tuition and board money, where plaintiff's son had been expelled for smoking before school work began, and where three witnesses testified that the son had admitted that he had smoked and the son denied it, the verdict for plaintiff was sustained, where after reading all the evidence it was evident that the jury may have been shocked by the peculiar ethics prevailing at the school, which not only made it a matter of honor to expel or frighten a student who smoked a cigarette before school work began, but permitted the keeping of $500 already paid for tuition, etc., and the holding of plaintiff liable for the charges for another half year, and where the jury may have found from the evidence that the motive behind the expulsion was to enable defendant to retain a large sum of money and collect a further large sum at the end of the school year, without rendering any equivalent therefor.

9. SCHOOLS—*promise by school officer to refund tuition and board money to expelled student upon entry of other student to take his place.* In an action by a father to recover tuition and board money

after his son had been expelled before school work began, the verdict for plaintiff was authorized if the jury believed the testimony of the son that when he asked the head master to refund his money, he promised that the first person who came into school would take his place and the money would then be refunded, as it was admitted that eight or nine students were afterwards received to fill vacancies.

10. INSTRUCTIONS—*reliance on errors not specified in written motion for new trial.* Error in giving instructions could not be complained of where, in the written motion for new trial setting up specific points and specifying certain instructions, those in question were not specified.

11. PLEADING—*filing special objections to instructions on motion for new trial as waiver of other objections.* While under the present section 81 of the Practice Act (Cahill's Ill. St. ch. 110, ¶ 81), instructions could have been questioned without a motion for new trial, or under such a motion without specifying any points, the filing of special points under the motion for new trial in question waived error in the giving of instructions not specified in such motion.

12. PLEADING—*right to allowance for board and books furnished expelled student when not claimed in affidavit of merits, motion for new trial or assignments of error.* Where, in an action for the return of tuition and board money, defendant claimed that it should have been allowed for the use of a room for two nights, for four meals and for books, the allowance was denied where the affidavit of merits made no such defense, the allowance was not claimed in the points filed on motion for new trial nor in the assignments of error, and where there was no proof of the worth of the board or books, and where interest, if allowed, would have far exceeded the amount of the items.

Appeal from the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed November 2, 1921.

COOKE, POPE & POPE, for appellant.

E. S. GAIL, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Lake Forest University, a corporation, conducts a school at Lake Forest, Illinois, one branch of which,

called the Academy, is a preparatory school for boys. W. S. McClintock, who lives at Marianna, Arkansas, applied for admission of his son, Oliver W. McClintock, to the Academy, and he was accepted. McClintock remitted in advance $500 for tuition, board and other charges for the first half year. Oliver arrived in the late afternoon of September 17, 1918, was expelled late in the evening of September 18, and left for home before breakfast on the morning of the 19th, after he had been refused another chance. The University refused to refund the money, but advanced him enough to take him home. McClintock then wrote, requesting that the money be returned. This was refused, and the head master wrote McClintock that he was liable to the University for tuition, board and room for the whole year. After the school year closed, McClintock sued the University in the county court of Lake county for the money he had paid. He filed the common counts, with an affidavit of claim for money paid and advanced to defendant on which $500 was stated to be due. Defendant filed a plea of nonassumpsit. After a jury trial was begun, defendant by leave of court filed an affidavit of merits.

Plaintiff had a verdict for $465. Motions by defendant for a new trial and in arrest of judgment were made and denied. Plaintiff had judgment on the verdict, and defendant appeals. We affirmed the judgment and granted a rehearing.

Appellant argues that it is not bound by its affidavit of merits because appellee's affidavit of claim is defective, in that it is not made by plaintiff and the affiant does not state by what authority he makes it. The point was not raised in the court below, where the authority could have been shown. Section 55 of the Practice Act (Cahill's Ill. St. ch. 110, ¶ 55) requires the affidavit of merits to be made by defendant, or his agent or attorney, but it makes no such requirement of plaintiff, but only provides for an affidavit. The

affidavit of claim was made by E. S. Gail, and it is attached to the declaration, which is signed "E. S. Gail, plaintiff's attorney." We hold that affidavit sufficient, and appellant is therefore limited by its affidavit of merits. The statute required appellant to therein specify the nature of its defense. This affidavit was by appellant's attorney, and set up a rule of the Academy prohibiting students from using tobacco, and that a violation of said rule called for expulsion, and appellee's knowledge of said rule, and that after Oliver entered the Academy he used tobacco and smoked cigarettes, and that he was expelled for said violation; and that the rules provided that no payment would be refunded in case of expulsion. The affidavit concluded with the statement that defendant does not owe plaintiff anything for money had and received. This latter statement was a mere conclusion of law and added nothing to the affidavit. *Perry v. Krausz,* 166 Ill. App. 1; *Weil v. Federal Life Ins. Co.,* 182 Ill. App. 322, and 264 Ill. 425; *Harris v. Willis,* 209 Ill. App. 402. The appellant was limited to the defense set up in the affidavit, under the present statute, as held in many cases cited by us in *Miller v. Thomas,* 200 Ill. App. 125, and in *Reddig v. Looney,* 208 Ill. App. 413. That defense was that the contract provided that no payment should be refunded because of expulsion, and that the rules authorized an expulsion of a student for the use of tobacco, and that Oliver was expelled because he used tobacco and smoked cigarettes. There is no proof that while a student Oliver used any tobacco, except to smoke a cigarette in the village, which Oliver denied. There is much evidence as to whether Oliver pledged his word of honor and as to whether he violated his word of honor, and the head master, who sent Oliver away, testified that Oliver's breaking his word of honor was a more serious offense than his smoking, and it is perhaps a fair inference from the head master's evidence that the

expulsion was really for breaking his word of honor; but that is not a defense here under the affidavit of merits. The only questions raised under this affidavit of merits were whether Oliver smoked in the village, and, if so, whether under all the evidence he was lawfully expelled therefor.

Appellant argues that appellee cannot recover under the common counts, because he is suing for damages for a breach of the contract by appellant, which would require a special count setting up the contract and appellant's breach thereof; and also because appellee was the one who broke the contract. We hold appellee is not suing for damages for a breach of the contract by appellant, but appellee's claim is that by the expulsion appellant refused to furnish the tuition, etc., which it had agreed to furnish, and that such abandonment of the contract by appellant justified appellee, if he so elected, to also disaffirm the contract, and to sue for the return of the payment made by him, as if the contract had never existed, and that his bringing this suit is such an election. Such a course is justified by *Arnold v. Dodson,* 272 Ill. 377, and *Smith v. Treat,* 234 Ill. 552. By sending Oliver home, appellant in effect refused to perform its contract to furnish tuition, etc., to him, and if that act by appellant was not justified, appellee had a right to sue under the common counts and recover the money he had paid for such tuition, etc., which appellant had received and in equity and good conscience ought to return. *Bannister v. Read,* 1 Gilm. (Ill.) 92, 99, 100; *Manson v. Culver Military Academy,* 141 Ill. App. 250.

Appellee's application for the admission of Oliver to the Academy stated that he understood the rules and regulations for the government of the Academy as published in its catalogue, of which he had received a copy. That catalogue stated that all boys admitted to the school are required to give their word of honor to certain things, one of which was not to use tobacco

during term time while under the school rules and regulations. It was also therein stated that if a boy should break his word of honor he would be instantly dismissed; and in another place, that pupils are received only for the entire year, except in the event of vacancies which will be filled for the remainder of the year, and that no deduction is made for students who are dismissed, with certain exceptions not applicable here. It also stated that of the annual charge, $425 was payable on the opening day of the school year and $400 on January 15. When this application was accepted by appellant a contract was thereby concluded between appellant and appellee. *Manson v. Culver Military Academy, supra.* The charter of appellant was not in evidence, but without express grant such a school has the power to adopt and enforce such rules as its governing body deem expedient for the government of the institution, and the courts may not interfere with their enforcement if they do not violate good morals or the law of the land or unless their enforcement is from malicious or improper motives other than the due enforcement of the rules and regulations of the school. The first part of the foregoing statement is supported by *People v. Wheaton College,* 40 Ill. 186. The latter part is conceded by appellant in instruction No. 6, which the court gave at its request, and by which appellant is bound. See also *Hodgkins v. Rockport,* 105 Mass. 475; *Kentucky Military Institute v. Bramblet,* 158 Ky. 205, 164 S. W. 808; *Teeter v. Horner Military School,* 165 N. C. 564, 81 S. E. 767; *State v. Burton,* 45 Wis. 150.

There was in the Academy a body of students, organized under the direction of appellant, called the Student Council, composed of nine students, five of whom were selected by appellant and four by the students. From the entire evidence the jury could reasonably infer that it was the duty of that body to spy upon the students, especially new men, and if any one

of them was detected in the slightest infraction of the rules, to frighten him and to drive him from the school without the necessity of the governing body of the school taking any action in the case. The Student Council for the new school year had not yet been selected, but it was the practice that the members of the Council for the preceding year who returned should act as the Council until the new Council was selected. Several members of the Council of the previous year were present and acting at the time here in question. Oliver knew none of the students. Two new students from Chicago, Bulkley and Schniewind, were in the village in the afternoon of Wednesday, September 18, and were smoking. Some member of the Council learned this in the evening of that day, and called said students before them, got an admission that they had been smoking, and told them to leave before they were expelled or "kicked out" by the faculty the next day, and they left the school that evening and returned to Chicago. One of the two members of the Council who testified for appellant testified that Schniewind told them that McClintock had also smoked. After Schniewind and Bulkley had left, the Council interviewed Oliver and charged him with smoking. Oliver testified that he had not used tobacco in any form nor had any tobacco in his possession while there; that the Council accused him of smoking; that he denied it; that nothing more was said to him about his having smoked, but they then said he should have reported smoking by others when he saw it. They told him he would be expelled the next morning by the faculty. That night he wired his father he was leaving for some unintentional violation of some rule. He staid in his room that night. Next morning he went to the head master and told him he had violated some rule, but that the head master did not ask or learn what rule. Oliver asked that his tuition be refunded. The head master told him that the first person that came to the school

would take his place and then the money would be re-funded. He then left for home without his breakfast. Two of the Student Council testified that Oliver, after being charged with it, admitted he had smoked, and the head master testified that Oliver admitted to him that he had smoked. The head master testified to a meeting of the new students Wednesday morning, at which the rules were read and explained, including the rule against the use of tobacco, and that each student in turn came forward and took the hand of the head master and pledged his word of honor to observe these rules. No one testified that Oliver was there, but the head master said Oliver admitted to him that he was present and pledged his word of honor. Oliver testi-fied that he was not present at any meeting where the rules were read or where he shook hands with the head master and pledged his word of honor. He ad-mitted he had been told in Arkansas by a former stu-dent that the use of tobacco was forbidden.

Appellant contends that the jury should have be-lieved its three witnesses on that subject and should have disbelieved Oliver, both because of the numerical preponderance for appellant, and also because Oliver would be likely to testify untruly to appease his father, while it is not conceivable that the two students and the head master would testify untruly. When all the evidence of the two members of the Council and of the head master is read in the record, it is evident that the jury may have been shocked by the peculiar ethics which prevailed at this Academy, which not only made it a matter of honor to expel or frighten away a student who smoked a cigarette before school work began and who begged (as the head master states) to be given another chance, but also to retain $500 al-ready paid for tuition, etc., and hold the father liable for the charges for another half year. The jury may have decided that the penalty was so disproportionate to the offense, and the question of honor involved so

twisted and peculiar, that it affected the confidence of the jury in the reliability of their testimony. But if the greater weight of the evidence was clearly favorable to appellant on the question whether Oliver admitted that he smoked a cigarette in town Wednesday afternoon, it does not necessarily follow that the trial court should have directed a verdict for appellant or that we should reverse because such direction was not given. Another issue was also to be decided to authorize a verdict for appellant, as conceded in instruction No. 6, given at appellant's request, which was as follows:

"The written and signed application of the plaintiff, W. S. McClintock, together with the printed catalogue and regulations of the academy, referred to in the said signed application, constitute a contract between the said plaintiff and the defendant, and if you believe from the evidence, that the said son entered the Lake Forest Academy in pursuance of said application, he then and thereby became bound to obey all the rules and regulations of said academy as published in its said catalogue, and all other rules and regulations as were adopted and in force at the time his said son entered and was present and a student in said academy, and if you believe from the evidence that the said son of plaintiff violated and broke any of the said rules and regulations which provided or called for expulsion as published in said catalogue and other rules and regulations of said academy, and was expelled, then you are instructed that the plaintiff cannot recover in this case, and you should find for the defendant, unless you further believe from the evidence that the defendant dismissed said Oliver Wood McClintock from malicious and improper motives other than a due enforcement of the rules and regulations of the academy."

The jury may have found from the evidence that the motive behind this expulsion was not to enforce a high sense of honor in the school, but to enable appellant to retain a large sum of money, and to collect a further

large sum of money from appellee at the end of the school year, without rendering any equivalent therefor. Two other expulsions the same day presumably netted appellant other like sums. If that was the conclusion of the jury from the evidence, then the verdict for appellee was authorized under appellant's own instruction. If the jury had returned a special verdict that appellant was actuated by improper motives, and the trial judge had approved that verdict, we do not see how we could demonstrate that such a verdict was not supported by the evidence. This was peculiarly a question of fact for the jury.

If the jury believed the testimony of Oliver, that when he asked the head master to refund his tuition, the latter promised that the first person who came into the school would take his place and his money would then be refunded, that would authorize a verdict for appellee, since the head master admitted that a part of his conversation with Oliver was on that subject, and also testified that during the school year eight or nine or ten students were afterwards received to fill vacancies. That made it the duty of appellant to put the first of these later students in the place of Oliver and to then refund the money, or at least a proportionate part thereof. Appellant knew when each of these later students came and what part of the year's tuition, room rent, etc., they paid, and introduced no such proof, except that the head master testified he thought the first one was accepted in December following. If the jury believed there was such a promise, then appellant is liable for the amount which should have been refunded. The failure to make such a refund adds to the reasons from which the jury might infer that the appellant was not actuated by proper motives in the expulsion of Oliver.

Appellant argues that the court erred in giving instructions Nos. 1 and 2, requested by appellee. Appellant made a motion in writing for a new trial, and

specified the points upon which it relied, and specified certain instructions given for appellee, but instructions Nos. 1 and 2 were not specified therein. Under the present section 81 of the Practice Act (Cahill's Ill. St. ch. 110, ¶ 81) appellant could have questioned these instructions without a motion for a new trial, or under such a motion without specifying any points, but when it filed special points under said motion it waived all other points, and therefore it waived any error in giving said instructions Nos. 1 and 2. *Yarber v. Chicago & A. R. Co.*, 235 Ill. 589, on p. 602. Having waived these errors, if they existed, appellant could not regain the right to question them by the general assignment of errors attached to the record in this court.

Appellant claims that it should have been allowed for the use of a room by Oliver for two nights and for his supper Tuesday night and three meals Wednesday and for a bill of $6.06, charged against Oliver for books which he obtained and took away. The affidavit of merits did not set up any such defense. It was not claimed in the points filed on the motion for a new trial nor in the assignments of error here that the verdict is excessive, if a recovery was warranted. There is no proof what said board or room or books were worth. Appellee was entitled to interest from the time of the demand by him and the refusal by appellant, something like a month after the expulsion, and that interest to the day of trial would have far exceeded the amount of said items.

The judgment is therefore affirmed.

*Affirmed.*