## Smith v. Gettysburg College

*Richard C. Snelbaker,* for plaintiff.
*Robert L. McQuaide,* for defendant.

SPICER, *P.J.,* May 7, 1982—

## FINDINGS OF FACT

1.  Plaintiff, Andrew G. Smith, is a senior student currently enrolled at Gettysburg College.

2.  Defendant is Gettysburg College, a private liberal arts college.

3.  Plaintiff matriculated at Gettysburg College in 1978 at which time he was furnished with a catalogue, a financial aid statement and an Honor Code booklet.

4.  At the time furnished with the financial aid statement, plaintiff signed an acknowledgement.

5.  Subsequent to plaintiff's enrollment but prior to the incident giving rise to this suit, Gettysburg issued a revised Honor Code booklet and a letter explaining the change in the definition of plagiarism.

6.  On November 2, 1981, plaintiff submitted a paper as part of his course requirements for Chemistry 353.

7.  The paper consisted of 20 pages of handwritten material and was intended to describe two phases of student work, namely, an observed laboratory experiment and research relating to the experiment.

8.  The course teacher was Dr. Susan Hathaway, Assistant Professor of Chemistry at Gettysburg College.

9.  At the time he submitted the paper, plaintiff's class ranking for the course was either last or next to last.

10.  Dr. Hathaway initially graded the paper B+ but checked references because of her opinion the paper was too good to be plaintiff's work.

11.  After checking, Dr. Hathaway discovered that the paper was accurately footnoted but had been copied almost completely verbatim from ref-

erence material without the use of quotation marks.

12. Dr. Hathaway reported the paper as plagiarism and a violation of the Honor Code to the Honor Commission.

13. On November 3, 1981, plaintiff was orally notified that he was being charged with an Honor Code violation because of the paper.

14. Plaintiff has never received a written charge in which the nature of the charges were fully described.

15. Pursuant to school policy, a case investigator was appointed to represent plaintiff and a hearing was scheduled.

16. A hearing was scheduled by the Honor Commission for November 10, 1981.

17. At the time and place scheduled for the hearing, plaintiff appeared and pled guilty to the violation.

18. A person who, without being charged, admits to an Honor Code violation may, under pertinent college regulations, receive a failing grade for the work involved if such admission is made within twenty-four hours of the violation.

19. Plaintiff received a failing grade in the course and had certain grants converted to loans for the succeeding semester. Plaintiff's transcript will show a failure for the course but nothing else.

20. Under the circumstances, plaintiff's penalty was the lightest that could be imposed.

21. The financial aid granted to plaintiff was, subject to the conditions contained in defendant's Exhibit 1, made on a year to year basis.

22. The change in the financial arrangement occurred within an academic year.

23. Plaintiff explained his failure to use quotation marks as being the result of inadvertence.

24. Plaintiff explained his plea of guilty as being caused by the advice of his case investigator. The advice was said to have been to plead guilty because if plaintiff proceeded to hearing and was found guilty he would face expulsion.

25. The case investigator has denied the testimony by affidavit filed with this court.

26. Plagiarism was defined in the 1978-1979 Honor Code Bulletin as follows (page 17):

Plagiarism means the intentional use of the opinions, ideas, writings, pictures, diagrams, calculations, or graphs of another person as if they were one's own.

27. The 1981-1982 Bulletin restated this definition but deleted the word "intentional."

28. The letter sent to students (plaintiff's Exhibit 3, dated July, 1980) explained the deletion of the requirement of intent but also stated that inadvertent, denial, or typographical errors or omissions were not meant to be covered.

29. Both Honor Code Bulletins made clear that quotation marks should be used to indicate that "actual words of the author have been used" (plaintiff's Exhibit 2, page 18). The later Bulletin deals concisely with this in the following manner:

A more difficult problem involves the use of proper punctuation and paraphrasing. Documentation of substance by means of footnote and bibliography is the major part of the requirement, but acknowledgment of the actual diction and syntax (i.e., words and structure) of the cited material is also necessary. Verbatim quotation must be indicated by means either of opening and closing quotation marks surrounding the cited passage or, in the case of paragraph length or longer citation, by means of single spacing and indentation so that the

cited material is easily distinguishable from the remainder of the student's work. The use of sources without such distinguishing punctuation means that the cited material has been paraphrased.

Paraphrasing is the most crucially misunderstood technique. Every student must be fully aware of the necessity, in paraphrasing, to make the expression of her/his source material completely her/his own. This change involves altering the wording and syntax almost completely: simply changing one word in every four or five is not enough.

The Honor Commission, in considering the matter of paraphrasing and punctuation, faces the most difficult kind of judgment because of the great variation among students in their understanding of paraphrasing and among faculty in their explanation of paraphrasing. Consequently, when the Honor Commission is faced with a case where the documentation of substance (i.e., footnotes and bibliography) is properly employed and where the chief problem is with punctuation and paraphrasing, the Commission has every right to turn the work back to the faculty member and indicate the necessity that the paper be graded according to her/his judgment. The reasoning for this judgment is that, according to Article 1, Section 4 of the Honor Commission Constitution "The writing and/or ideas of another" have been used with proper acknowledgment. 1981-1982 Bulletin, page 19.

30. The definition of plagiarism in the 1981-1982 Bulletin comports with the accepted standards in the educational field. As an example, Lehigh University similarly defines plagiarism. (Defendant's Exhibit 4).

31. Plaintiff's paper violated the Honor Code

standards of plagiarism and also would be considered plagiaristic under standards acceptable in the educational field.

32. Defendant has no significant relationship with any government and does not receive tax revenues sufficient to institute its actions as state actions.

33. The college followed the procedures established in the Honor Code.

34. These procedures do not require written notice or a detailed notice of that with which a person is charged.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and over the subject matter.

2. The due process clause does not apply to actions taken by defendant.

3. The relationship of the parties is contractual in nature.

4. Defendant owed to plaintiff the duty to conduct its disciplinary procedures in a reasonable manner comporting to ideas of basic fairness.

5. Defendant's definition of plagiarism and its procedure in dealing with same are not arbitrary or capricious.

6. Plaintiff has proven the following:

A. Immediate and irreparable harm which cannot be compensated by money damages.

B. That greater injury will result from refusing the injunction than by granting it.

C. The effect of the injunction would restore the parties to the status quo existing immediately prior to the alleged wrongful conduct.

7. Plaintiff has not proven clearly that he has rights which defendant has violated.

8. Defendant properly moved to supplement the record the day following the hearing.

## DISCUSSION

Although the incident giving rise to this case occurred in November, 1981, plaintiff did not file his complaint in equity and petition for a preliminary injunction until March 31, 1982. An order setting a hearing was filed April 1, 1982. We have not been apprised of the reason for the delay nor do we consider it further.

As may be ascertained from our findings of fact, plaintiff is a senior on the verge of graduating from Gettysburg College. He received a failing grade for Chemistry 353 because of a conviction of an Honor Code violation. The violation will not appear on his transcript but he feels, apparently, he will have to explain the failing grade to prospective employers and that will impugn his honesty.

He has sought the aid of this court to prevent the necessity of this occurring. Defendant has filed preliminary objections, which are still pending, and initially moved to dismiss this action at the start of the hearing. Most of defendant's reasons are based upon its understanding that we lack jurisdiction because defendant is a private institution. We agree with defendant that the Fourteenth Amendment does not support plaintiff's cause of action but hold we do have jurisdiction because of the contractual dispute between the parties.

At the hearing on April 27, 1982, evidence was introduced consisting of the testimony of (a) plaintiff, (b) Frank Williams, Dean of Educational Services at the College, and (c) Susan Hathaway, Assistant Professor of Chemistry. Plaintiff introduced, without objection, four exhibits referred to in the findings of fact. Defendant introduced five

exhibits, four of which were also received without objection. Exhibit 4, the Lehigh University Bulletin, was received over objection.

Plaintiff testified that his case investigator advised him to plead guilty at the Honor Commission hearing November 10, 1981. Despite the fact that this testimony was not supported by allegations in either the complaint or petition, defendant posed no objections. Instead, it moved, the following day, to supplement the record by introducing the affidavit of the case investigator. Under most circumstances we would not permit such amendment but do so under these. Affidavits may properly be admitted and considered in a determination on whether a preliminary injunction should issue: Pa.R.C.P. 1531(a). Defendant did not have advance notice of the type of testimony and properly responded with an affidavit.

The court can sympathize with the positions of both parties in this matter. Defendant is conscious of its integrity and reputation as a great learning institution and plaintiff is a young man who has been marked with a charge of dishonesty because of the lack of quotation marks. Perhaps if we were trying the case ab initio we might be tempted to assess a lesser penalty. However, that is not our function. We only determine whether plaintiff has clearly shown the existence of rights and a manifest wrong: New Castle Orthopedic Associates v. Burns, 481 Pa. 460, 392 A. 2d 1383 (1978); Vulcanized Rubber & Plastics Company v. Scheckter, 400 Pa. 405, 162 A. 2d 400 (1960); American Federation of State, County and Municipal Employees, AFL-CIO v. Shapp, 443 Pa. 527, 280 A. 2d 375 (1971).

Plaintiff argues that the Fourteenth Amendment

applies to this case even though conceding that he has failed to show any tax support or symbiotic relationship between the college and any governmental institution. Generally, the triggering condition for Fourteenth Amendment applicability is "state action", see 58 A.L.R. 2d 905, 37 A.L.R. Fed. 601 §2[a].

The distinction between private and state actions is sometimes difficult to determine. Nevertheless, the weight of authority is that Fourteenth Amendment due process does not apply to private schools: Tedeschi v. Wagner College, 70 A.D. 2d 934, 417 N.Y.S. 2d 521 (1979). Performance of an educational process is not sufficient to constitute "state action." Swanson v. Wesley College, Inc, Del. Superior Ct. 402 A. 2d 401 (1979).

Depriving a student of financial aid provided by government grant is "state action," Corr v. Mattheis, 407 F. Supp. 847 (D.R.I. 1976), and it has been held that deprivation of pecuniary benefits resulting from a contractual relationship involves due process: Masonic Grand Chapter of Order of Eastern Star v. Sweatt, Tex. Civ. App., 329 S.W. 2d 334 (1959). Plaintiff argues that because his financial aid was changed to a loan, due process is required.

The argument has some merit but we are not convinced. Sweatt, supra, involved financial benefits that resulted from membership. The court ordered an expelled member restored to membership because contractual rights had been impaired. In our case, plaintiff's financial aid is easily separable from the extraordinary relief sought in the preliminary injunction. Furthermore, plaintiff could easily be compensated in money damages for such ac-

tion, assuming it to be wrong.[1] We simply cannot tie the college's right to make regulations and enforce them to questions of finance. One involves the powers of equity and the other doesn't.

We hold that plaintiff has no due process rights, the violation of which are cognizable in equity.

The other theory under which plaintiff proceeds is one of contract. In this area, some courts speak of reasonableness, which involves some concept of notice and right to be heard: Swanson v. Wesley College, Inc., supra. However at least one Pennsylvania case has indicated that there is no such need in the absence of an actual contract providing for such: Barker v. Bryn Mawr College, 278 Pa. 121 (1923).

Since due process involves a basic sense of fairness, one might wonder, since "The fundamental requisite of due process of law is the opportunity to be heard (citations omitted) . . . at a meaningful time and in a meaningful manner." Goldberg v. Kelly, 397 U.S. 254, (1970), if reasonable standards and due process standards are not the same. One only has to look at the sweeping scope of review in some due process cases[2] and compare these holdings in cases applying a reasonable standard.[3]

---

1. There are cases which hold that colleges have the right to adopt reasonable regulations and to expel for violations thereof. In cases of expulsion, the expelled student is not entitled to a refund of tuition. See Teeter v. Horner Military School, 81 S.E. 767 (N.C. 1914).

2. See, eg. Scoggin v. Lincoln University, 291 F.Supp. 161 (W.D. Missouri 1968), complete review of action to see if supported by substantial evidence; Corr v. Mattheis, supra, Esteban v. Central Missouri State College, 415 F. 2d 1077 (Eighth Cir. 1969), procedure dictated by Court.

3. Tedeschi v. Wagner College, supra, plaintiff was entitled to a hearing but didn't get one. It didn't matter since he was guilty anyhow.

In this case, the college followed the provisions in its published material. It reserved the right to change conditions in its catalogue. The reservation gave it the right to change the definition of plagiarism: Barker v. Bryn Mawr, supra. The procedure is reasonably designed to give one notice and an opportunity to be heard in a meaningful manner. The definition of plagiarism clearly covers plaintiff's work. His signed acknowledgement clearly states that ignorance is no excuse. The penalty, though perhaps harsh, must be measured against the college's purpose of producing intelligent, informed, and responsible graduates.

The attached order will be entered.

## ORDER OF COURT

And now, May 7, 1982, defendant's motion to dismiss is denied and its motion to supplement the record is granted. Plaintiff's request for a preliminary injunction is denied.