INDEPENDENT SCHOOL DISTRICT OF MANCHESTER, Appellant, v. RUTH C. DUDLEY, Appellee.

DAMAGES: Liquidated Damages—Inequitableness. A provision for *"$200 liquidated"* damages for any breach of a contract to teach a school will not be enforced (1) when the school district suffered no actual damages, (2) when actual damages could easily be shown, in case there were any, and (3) when, from the circumstances, it would not be equitable to enforce such provision.

*Appeal from Delaware District Court.*—H. B. BOIES, Judge.

MARCH 6, 1923.

ACTION at law, to recover upon a teacher's contract. Plaintiff seeks to recover $200 as liquidated damages because of an alleged breach of the contract to teach. Trial to the court without a jury. Judgment for defendant. Plaintiff appeals.— *Affirmed.*

*Blair & Doolittle* and *Yoran & Yoran,* for appellant.

*Carr & Carr,* for appellee.

PRESTON, C. J.—By the contract, defendant agreed to teach in plaintiff district for 36 weeks, commencing September 6, 1920, at $90 per month. The final payment of the amount due was not to be made until the teacher should have fully performed her duties, turned over all property of the district, and made all required reports. Early in May, 1920, Mr. Hilliard, superintendent of plaintiff's school, wrote to defendant, who was then a student at Ames, and offered her a position as teacher. Several letters were exchanged in regard to the matter. Mr. Hilliard had authority to interview teachers and look up their records, and took an active part in the recommendation of teachers; and as a general rule, his recommendations were carried out. Where he had been in correspondence with the teacher and was acquainted with her, he usually sent the contract to the teacher. On May 13th, the superintendent wrote the contract sued on, and wrote a letter to defendant, and mailed them both to her in the same envelope. It is signed by the defendant, and by the district by the president of the board of directors. Below the signatures is further writing or printing, to the effect that the foregoing contract was guaranteed, and the fulfillment thereof by the teacher, except by reason of illness or death, or unless released by the board of directors, "and in default thereof agree to the forfeiture of all sums remaining due and unpaid, under this contract, and in addition thereto agree to pay to the said district the sum of $200 as liquidated damages, within ten days after default is made." Signed by the defendant. The letter from Mr. Hilliard accompanying the contract is, in part, as follows:

"I am sending you a contract to be signed in two places, as indicated, and returned to me. We ask our teachers to sign a guarantee at the bottom of the contract, in order that we can hold them until we secure some teacher in their place. I can assure you that you will suffer no hardship as result of signing."

The next day, May 14th, Mr. Hilliard attended a meeting of the board, and reported that he had hired Miss Dudley. The board knew that the correspondence with her had been conducted by Mr. Hilliard. The contract was not before the board at this meeting of the 14th. At the meeting of the board, the defendant was elected as teacher. The contract was signed by Miss Dudley about May 20th, and returned, and it was signed by the president of the board a few days thereafter. The defendant did not perform the contract. She testifies that she had another opportunity to teach at a higher salary, and that she could not teach in the country because she could not walk so far. The defendant testifies that she read the letter and relied upon the statements therein, signed the contract, and returned it to Mr. Hilliard. In July, defendant told the president of the board that she had an offer in high-school work, which she had prepared herself for, and that she wished to be released from the contract. The president told her that the right thing to do would be to send in a resignation, and it might help if she helped secure a competent teacher for the place. She sent in her written resignation some 30 days or more before the beginning of the school year. She did not sign a contract with the other school until after her resignation was sent to the plaintiff board, and until she thought she had done the right thing in being released, as she says. She testifies that there were two teachers who would have been glad of the position, and that they could have been secured before the beginning of the school year. One of these teachers lived near Manchester, was experienced, and could have filled the position. She made application for the position in August, before the beginning of the school year, and at the same salary. Defendant testifies to a conversation with Mr. Hilliard with reference to her release, and that he said he could get a girl from Audubon on the phone, if necessary, and that at first he acted in favor of defendant's release. She

thought she had been released, because of the conversation with the superintendent and the secretary of the board; or that it would be taken up, and that she would be released by the board.

It is plaintiff's contention that the damages provided for in the contract or the guaranty are liquidated damages. It is contended by appellee that there was no contract because the minds of the parties did not assent to the same thing in the same sense; that the contract was induced by fraud and misrepresentation of plaintiff's agent, while acting within the apparent scope of his authority, in writing the letter before referred to; that plaintiff is estopped from denying Mr. Hilliard's authority as agent, as against defendant, who was led to sign the contract on the strength of the agent's representations; that the letter accompanying the contract is admissible for the purpose of showing false representations, and that the contract, under the circumstances, cannot be construed without the letter; that the sum named in the forfeiture clause should be construed as a penalty; and that it is unconscionable and inequitable. We think the last point just mentioned is well taken, and is decisive of the case. This being so, we deem it unnecessary to discuss the other propositions. Under the terms of the guaranty, the defendant might have been called upon to forfeit a considerable sum in addition to the $200.

It should have been said that no actual damages are pleaded or shown to have been suffered by the school district. The record is not very clear as to whether the district secured a competent teacher to take the place of the defendant, and one who commenced with the school year. It does appear that defendant's resignation was placed in the hands of plaintiff in plenty of time to secure another teacher; that negotiations were carried on to secure another teacher; that other competent teachers were available; and that at least one had made application. We assume that the board of directors did their duty, and employed someone in place of defendant, rather than not to furnish a teacher. As said, there is no claim that this was not done. The word "forfeiture," as well as the words "liquidated damages," is used in the guaranty. The fact that the words "liquidated damages" are used, is not controlling. Appellant cites *Ahlers*

*v. Harrison,* 131 Iowa 289, *Joeckel v. Johnson,* 178 Iowa 231, *Wolf v. Des Moines & Ft. D. R. Co.,* 64 Iowa 380, *Sanford v. First Nat. Bank,* 94 Iowa 680, *De Graff V. & Co. v. Wickham,* 89 Iowa 720, 17 Corpus Juris 931, and other cases, to the proposition that contracts for liquidated damages, deliberately made in good faith, and not unconscionable, will be enforced by the courts. Appellee cites and relies on some of these cases to sustain her proposition that the sum named in the forfeiture clause should be construed as a penalty. Further cases cited by appellee are *Sanders v. McKim,* 138 Iowa 122; *Elzey v. City of Winterset,* 172 Iowa 643; *Coen & Conway v. Birchard,* 124 Iowa 394; *Sheldon v. Chicago Bonding & Sur. Co.,* 190 Iowa 945; *Elzy v. Waterloo, C. F. & N. R. Co.,* 193 Iowa 330; and the *De Graff, Sanford,* and *Joeckel* cases, cited by appellant; also, 17 Corpus Juris 767, 771, 935, 936. We shall not stop to review all the cases. Nothing appears in the record to show why the damages suffered by plaintiff, or likely to be suffered, if any, could not be readily ascertained.

We said in the *Sanders* case, supra:

"We concur with the trial court in the view that the sum named in said instrument should be treated as a penalty only; and, in the absence of any claim, pretense, or evidence of injury or damage to the plaintiff, he ought not to recover. The fact that the bond contains a recital that the sum therein named is agreed upon as liquidated damages is not necessarily controlling as to its legal effect [citing cases]. It is well settled, for instance, that, if a bond be given to secure the performance of two or more conditions of varying degrees of importance, or if the stipulated sum be greatly in excess of the damages reasonably to be anticipated from a breach of its conditions, it will be held to provide a penalty, notwithstanding that, in terms, it prescribes liquidated damages."

*Elzey v. City of Winterset,* supra, was an action in equity by a contractor with the city for paving. The several contracts provided that, if the said party of the first part should fail to complete the work in accordance with the contract, an amount equal to $25 per day as liquidated damages should be payable to the city, etc. The trial court there found that, under this

language and the circumstances attending the transaction, the damage clause was to be treated as providing a penalty only; and that, in the entire absence of any showing of actual damage, the city was bound to pay the full contract price. The court said, in substance, that the question was often a troublesome one, but that, more frequently than otherwise, the solution was made to turn upon the peculiar facts; and that the fact that the contract used the expressed words "penalty" or "liquidated damages" is not at all conclusive as to the character of the stipulation. The court will look at the whole instrument and the subject-matter, and give it such interpretation as, under the circumstances, will effect the purpose which the parties intended to subserve. To this end the court may consider evidence of extraneous facts, to explain or make clear the real nature of the stipulation. The opinion quotes from Pomeroy's Equity to the effect that, if the intent is at all doubtful, the tendency of the courts is in favor of the interpretation which makes the sum a penalty, and that the court will not be bound by the expressed intent of the parties, if the stipulation shall, in view of the entire record, be found inequitable; and further, that the first consideration in sustaining a stipulation·for liquidated damages appears to be the difficulty, or impossibility, in some cases, of ascertaining and measuring the damages actually sustained by a breach of the contract. But this is not always sufficient. The tendency of the courts in recent years has been to look into all the circumstances and give effect to such an agreement only so far as equity and good conscience will permit; and if the sum stipulated is out of reasonable proportion to the loss or injury actually sustained or reasonably to be anticipated, it will be treated as a penalty only. In the *De Graff* case, it was said that whether the sum mentioned is to be considered as a penalty or as liquidated damages is a question of construction, on which the court may be aided by circumstances extraneous to the writing. Sedgwick on Damages, cited and quoted with approval in the *Elzy* case, says that, where the stipulated sum is wholly collateral to the object of the contract, being evidently inserted merely as security for performance, it will not be allowed as liquidated damages.

These rules are well settled, and we deem it unnecessary to discuss the matter further. As said, the record is not clear as to whether or not the plaintiff employed another teacher to take defendant's place. However, on this point, appellee cites 17 Corpus Juris 767 to 771, and Iowa cases therein cited, to the proposition that, where a party is entitled to the benefit of a contract and can save himself from loss arising from a breach thereof, at a trifling expense or with reasonable exertion, it is his duty to do so; that he can charge the party in default with such damages only as, with reasonable endeavors and expense, he could not prevent; and that this rule is especially applicable where one of the contracting parties has acquired notice of the breach, and makes no reasonable effort to mitigate the damages claimed.

We think the trial court rightly decided the case, and the judgment is—*Affirmed.*

WEAVER, STEVENS, and DE GRAFF, JJ., concur.