933 A.2d 382 (2007)
401 Md. 496
BARRIE SCHOOL
v.
Andrew PATCH, et al.
No. 12, Sept. Term, 2006.
Court of Appeals of Maryland.
October 5, 2007.
*384 Michael G. Campbell (Miller, Miller & Canby, Chtd., on brief), Rockville, for petitioner/cross-respondent.
Douglas V. Rigler, Arlington, VA, for respondents/cross-petitioners.
Argued before BELL, C.J. RAKER, WILNER[*], CATHELL[*], HARRELL, BATTAGLIA and GREENE, JJ.
RAKER, J.
The primary question we must decide in this case is whether a non-breaching party to a contract has a duty to mitigate damages where the contract between the parties contains a valid liquidated damages clause. We shall answer that question in the negative and hold that a non-breaching party has no duty to mitigate damages where the parties agree to a valid liquidated sum in the event of a breach.

I.
Petitioner, The Barrie School, is a private, non-profit Montessori school located in Silver Spring, Maryland. Respondents, Andrew and Pamela Patch, are parents who enrolled their daughter, Christiana, in The Barrie School for the 2004-2005 academic year. The Patch's entered into a re-enrollment agreement (the "Agreement") *385 with The Barrie School that contained a specific deadline for cancelling the Agreement. The Agreement stated that if respondents withdrew their child from The Barrie School after a specific date, respondents would pay tuition for the entire academic year as liquidated damages.
The Agreement provided for a $1,000.00 non-refundable deposit and payment of the remaining tuition balance of $13,490.00 in two installments. The Agreement contained an escape clause that allowed for unilateral cancellation, provided that the head of the school received written notice by certified letter before May 31, 2004. Under § 3 of the Agreement, respondents were obligated to pay the full tuition if they failed to meet the May 31, 2004 deadline for withdrawal. Section 3 of the Agreement provided as follows:
"I understand that unless the Student is withdrawn by written notice given by certified letter, return receipt requested, and received by the Head of School prior to May 31, 2004, I am liable for and agree to pay the entire year's charges for the academic year, including expenses, as later defined, incurred by the School for collection. Withdrawal, dismissal, absences or illness of Student during the year do not release me from any portion of this obligation."
The Patch's did not cancel the Agreement on or before May 31, 2004.
On July 14, 2004, forty-four days after the withdrawal deadline noted in § 3 of the Agreement, the Patch's sent a cancellation notice via facsimile to The Barrie School's admissions office and demanded a refund of their initial deposit. Respondents refused to pay any of the remaining tuition balance to the school and enrolled Christiana in another school.
The Barrie School filed a breach of contract action against respondents in the District Court of Maryland, sitting in Montgomery County. The Barrie School sought the remaining tuition balance for the 2004-2005 academic year, plus 12% interest, and attorney's fees. In their notice of intent to defend, respondents claimed that the Agreement had been procured by fraud, that it was a contract of adhesion, that the damages constituted a penalty, that The Barrie School had a duty to mitigate any damages, and that the Agreement was unenforceable because it violated public policy and Maryland's anti-competition laws.[1] Respondents also filed a counter-claim, seeking the return of their $1,000-00 deposit, interest, and attorney's fees.
The case proceeded to trial before the District Court. Charles Shayler, the Chief Financial Officer of The Barrie School, testified for petitioner; Andrew and Pamela Patch testified on their own behalf. Respondents' major argument at the close of evidence was that The Barrie School had a duty to mitigate its damages, notwithstanding the language of § 3 of the Agreement.
The District Court found that there was a valid contract between the parties, including a valid liquidated damages clause, that there was no fraud in the inducement to enter into the Agreement, and that the Agreement was not a contract of adhesion. Accordingly, the court denied respondents' counterclaim. With respect to the liquidated damages clause, the court reasoned as follows:
"I am satisfied that it is a valid liquidated damages provision, that based on the testimony of Mr. Goss, that there *386 wasit would have been next to impossible to assign an exact amount as to the impact of losing one child for the school year. And that in light of that, and the fact that A, it was agreed to by the parties, this was not a contract of adhesion, certainly as I understand a contract of adhesion to be. These people could simply have walked away from this. Their lives did notdid not depend on signing this contract. And that basing one year's tuition or using one year's tuition as the measure is certainly not unreasonable and in fact, Mr. Goss' testimony was that itprobably the one year's tuition probably represented less than the actual costs of educating the child at Barrie School. Okay, so I find the contract is okay, including the liquidated damages provision."
The court next addressed respondents' argument that, notwithstanding a valid liquidated damages clause, a non-breaching party has a duty to mitigate damages. The court concluded that The Barrie School's failure to mitigate damages was fatal to its claim, reasoning as follows:
"There is obviously the issue that I was most concerned with, and that was the issue of what effect liquidated damages has on the general rule that a party in Plaintiff in the face of a breach does have some duty to mitigate.
* * *
Even if the amount is difficult to determine, I don't see why in the world they still shouldn't do something to mitigate. And again, even if the tuition amount does not exactly hit the number, it sure comes close to it in terms of going toward making them whole.
And it's unquestionable that they did absolutely nothing whatsoever to try to fill the space for this child once they got the word in July that she wasthat she was not going to be there. Theythey didn't go through their old applications, they didn't put out any advertisements. They did absolutely nothing. And I understand there is the black letter rule. But I think even black letter rules are subject to some exception, and I don't see why, under the circumstances of this case, when theyeven if it couldn't exactly correspond to exact amount that they would have been harmed, they again, could have done a lot to have helped themselves out, at least to the extent of the amount they're suing for in this case. And that their failure to do so I do find to be fatal.
So for that reason I'm going to also grant a Defendants' verdict on The Barrie School as Plaintiff."
The court entered judgment in favor of respondents on The Barrie School claim.
The Barrie School noted a timely appeal to the Circuit Court for Montgomery County pursuant to Maryland Rule 7-102(b)(1).[2] The question presented to the Circuit Court was as follows:
"Where the trial court finds that a private school tuition contract contains a valid liquidated damages clause, does the school have a duty to mitigate its damages by locating a new student after the parents breach the contract by with-drawing *387 their child after an agreed deadline?"
Respondents noted a cross-appeal, arguing that the District Court committed error in (1) denying the fraudulent inducement claim, (2) finding that the liquidated damages clause did not constitute a penalty, and (3) denying portions of their discovery request as overly broad.
In a written opinion, the Circuit Court agreed with the District Court and held that even though the liquidated damages clause was valid and not a penalty, The Barrie School had a duty to mitigate damages. The court affirmed also the District Court holding that there was no fraud on The Barrie School's part and found that the District Court did not err in denying portions of respondents' discovery request. The Circuit Court stated as follows:
"The question is presented as to whether a party who is protected by a liquidated damages clause in a contract is excused of the normal contractual duty to mitigate its damages as a prerequisite to recovery. The court finds that such a duty does exist, notwithstanding the existence of a liquidated damages clause, and, thus, the District Court did not err as a matter of law in so finding. It is interesting to note that while no evidence of mitigation was presented, it would appear that mitigation had, in effect, already occurred when The Barrie School already enrolled more students than its budget projections called for."
We granted The Barrie School's petition for a writ of certiorari to this Court to address the following questions:
"(1) Is there a duty to mitigate damages in a breach of contract action where the trial court determines that the liquidated damages clause in the parties' contract is valid and enforceable and is not a penalty?
"(2) Is it proper for a circuit court to consider new evidence and make new factual findings in an appeal heard on the record?"
We granted also respondents' cross-petition to address the following questions:
"(1) May district and circuit courts deny discovery relating to the inducement, negotiation and formation of a contract containing a liquidated damages clause, on grounds that such discovery is `irrelevant' in light of this court's holding that a clause denominated as a liquidated damages clause, but, in fact, constituting a penalty is unenforceable?
"(2) When a contract provides an express provision that `ANY ALTERATIONS OR MODIFICATIONS TO THIS AGREEMENT WILL NOT BE ACCEPTED BY THE SCHOOL,' may a court conclude, in the absence of contrary evidence, that the contract is not a contract of adhesion?
"(3) Having denied discovery relating to the inducement and formation of a contract on grounds that it is `irrelevant' to an allegation of fraudulent or negligent inducement, may a court thereafter admit, over objection, and rely upon, hearsay evidence from the withholding party on the very same subject matter?"
Barrie School v. Patch, 392 Md. 724, 898 A.2d 1004 (2006).

II.
Before this Court, The Barrie School argues that a non-breaching party has no duty to mitigate damages where the parties have agreed to a valid liquidated sum in the event of breach. The school states that it is well settled that liquidated damages clauses are recognized and enforced in Maryland and that, when valid, such clauses do not require the injured party to reduce the agreed-upon amount by avoiding *388 loss. The Barrie School contends also that the Circuit Court abused its discretion by making factual findings regarding projected school enrollment figures for the 2004-2005 academic year.[3]
Respondents do not appear to controvert petitioner's argument that there exists a liquidated damages clause in the Agreement. Rather, respondents argue that the general law of contracts, i.e., the general duty to mitigate damages in the event of a breach, applies to a contract containing a liquidated damages provision. Respondents argue that the purpose of a liquidated damages clause is "solely to agree on the amount of damages," stating that "it does not have and should not have any effect on whether avoidable damages should be mitigated." In addition to their mitigation argument, respondents contend that The Barrie School suffered no actual damages from the breach because it enrolled more students than originally expected in the 2004-2005 enrollment projections. Respondents maintain also that the District Court erred in denying their discovery requests, that the Agreement was a contract of adhesion, and that they were entitled to recover their initial deposit because the Agreement was the product of fraudulent inducement and/or negligent misrepresentation.[4]

III.
Liquidated damages have been defined as a specific sum stipulated to and agreed upon by the parties at the time they entered into a contract, to be paid to compensate for injuries in the event of a breach of that contract. Board of Education v. Heister, 392 Md. 140, 155, 896 A.2d 342, 351 (2006) (stating that a liquidated damages clause is "a specific sum of money . . . expressly stipulated by the parties to a . . . contract as the amount of damages to be recovered by either party for a breach of the agreement by the other"). Whether a contract provision is a penalty or a valid liquidated damages clause is a question of law, reviewed de novo by this Court. Id. See also Hammaker v. Schleigh, 157 Md. 652, 667, 147 A. 790, 796 (1929).
Because respondents seek to set aside the bargained for contractual provision in the Agreement stipulating damages in the event of breach, respondents have the burden of proving that the clause should not be enforced. Placing the burden of proof on the challenger is consistent with giving the non-breaching party the advantage inherent in stipulated damages clauses, that of eliminating the need to prove damages, and with the general principle of Maryland law that assumes that bargains are enforceable and that the party asking the court to invalidate a bargain should demonstrate the justice of his or her view. See Dashiell v. Meeks, 396 Md. 149, 167, 913 A.2d 10, 20 (2006).
It has long been the rule in Maryland that valid liquidated damages provisions are enforceable. Our predecessors stated "the settled rule of law" with respect to liquidated damages as follows:
"[W]here the parties, at or before the time of the execution of the contract, agree upon and name a sum therein to be paid as liquidated damages, in lieu of *389 anticipated damages which are in their nature uncertain and incapable of exact ascertainment, that the amount so named in the agreement will be regarded as liquidated damages and not as a penalty, unless the amount so agreed upon and inserted in the agreement be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract. And whether it is excessive or whether the damages are incapable of exact ascertainment should be determined from the subject-matter of the contract considered in the light of all the surrounding facts and circumstances connected therewith and known to the parties at the time of its execution. That these questions should be considered and determined from the contract itself, its subject-matter and the surrounding facts and circumstances connected therewith with which the parties are confronted at the time of its execution, is made necessary in order to ascertain the intention of the parties, which is one of the essential factors in deciding whether the stipulation is for liquidated damages or is a penalty. It may afterwards be disclosed that the damages actually sustained are more or less than those anticipated at the time of the execution of the contract. If more, this fact would not characterize or stamp the stipulation as a penalty unless it was so exorbitant as to clearly show that such amount was not arrived at in a bona fide effort, made at or before the execution of the contract, to estimate the damages that might have been reasonably expected to result from a breach of it, and that it was named as a penalty for such breach. And on the other hand, if the amount stipulated was found to be inadequate, a greater amount could not be recovered for such breach, because of the agreement between the parties that the amount so named should be in lieu of the damages resulting therefrom."
Balto. Bridge Co. v. United Rys. & Electric Co., 125 Md. 208, 214-15, 93 A. 420, 422-23 (1915). This Court has not strayed from the notion that, absent specific statutory provisions, the time of contract formation is the appropriate point from which to judge the reasonableness of a liquidated damages provision.
Writing for this Court, Judge Harrell elucidated more recently the elements of a liquidated damages provision, stating as follows:
"There are three essential elements of a valid and enforceable liquidated damages clause. First, such a clause must provide in clear and unambiguous terms for a certain sum. Secondly, the liquidated damages must reasonably be compensation for the damages anticipated by the breach. Thirdly, liquidated damage clauses are by their nature mandatory binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact. While the language used by the parties is instructive in determining the validity of a liquidated damages clause, the decisive element is the intention of the partieswhether they intended that the sum be a penalty or an agreed-upon amount as damages in case of a breach and this is to be gleaned from the subject matter, the language of the contract and the circumstances surrounding its execution."
Heister, 392 Md. at 156, 896 A.2d at 352 (internal citations and quotations omitted).
Despite their general propriety, a clause purporting to provide liquidated damages will be deemed invalid as a penalty where the amount agreed upon is "grossly excessive and out of all proportion *390 to the damages that might reasonably have been expected to result from such breach of the contract." Balto. Bridge Co., 125 Md. at 215, 93 A. at 422. As Professor Williston has noted, "a liquidated damages provision will be held to violate public policy, and hence will not be enforced, when it is intended to punish, or has the effect of punishing, a party for breaching the contract, or when there is a large disparity between the amount payable under the provision and the actual damages likely to be caused by a breach, so that it in effect seeks to coerce performance of the underlying agreement by penalizing non-performance and making a breach prohibitively and unreasonably costly." 24 RICHARD A. LORD, WILLISTON ON CONTRACTS § 65:1, at 216-23 (4th ed.2002) (internal citations and footnotes omitted).
We have long recognized that "one of the most difficult and perplexing inquiries encountered in the construction of written agreements" is determining whether a contractual clause should be regarded as a valid and enforceable liquidated damages provision or as a penalty. Willson v. M. & C.C. of Baltimore, 83 Md. 203, 211, 34 A. 774, 775 (1896). Thus, "if there is doubt whether a contract provides for liquidated damages or a penalty, the provision will be construed as a penalty." Goldman v. Conn. Gen. Life Ins. Co., 251 Md. 575, 581, 248 A.2d 154, 158 (1968).
Maryland courts will uphold a liquidated damages clause as valid, and not a penalty, if it satisfies two primary requirements. First, the clause must provide a fair estimate of potential damages at the time the parties entered into the contract. See Heister, 392 Md. at 157, 896 A.2d at 352; Goldman, 251 Md. at 582, 248 A.2d at 158; H.J. McGrath Co. v. Wisner, 189 Md. 260, 265, 55 A.2d 793, 795 (1947); Hammaker, 157 Md. at 667, 147 A. at 796; Balto. Bridge Co., 125 Md. at 214, 93 A. at 422. Second, the damages must have been incapable of estimation, or very difficult to estimate, at the time of contracting. See Heister, 392 Md. at 157, 896 A.2d at 352; Goldman, 251 Md. at 582, 248 A.2d at 158; Wisner, 189 Md. at 265, 55 A.2d at 795; Hammaker, 157 Md. at 667, 147 A. at 796; Balto. Bridge Co., 125 Md. at 214, 93 A. at 422.
As we have indicated, in the absence of a statute providing otherwise, Maryland courts determine the validity of a liquidated damages clause by looking to the stipulated loss at the time of the contract's formation, and not actual losses resulting from breach.[5]See Heister, 392 Md. at 158, 896 A.2d at 353 (stating that *391 "whether the amount specified is a penalty or liquidated damages is to be determined as of the time of execution of the contract" (quoting Anne Arundel Co. v. Norair Engineering Corp., 275 Md. 480, 494, 341 A.2d 287, 294 (1975))); Hammaker, 157 Md. at 667, 147 A. at 796 (stating that in order for a "declared forfeit to become liquidated damages by interpretation, it must clearly appear that the amount named was reasonable compensation in fact at the time when the contract was made").
In the case sub judice, the lower courts found correctly that § 3 of the Agreement was a valid liquidated damages clause and not a penalty. The sum in § 3 was a reasonable forecast of just compensation for potential harm caused by a breach of the Agreement. The damages contemplated in the Agreement were neither grossly excessive nor out of all proportion to those which might have been expected at the time of contracting.[6]See Lake Ridge Academy v. Carney, 66 Ohio St.3d 376, 613 N.E.2d 183 (1993) (finding that a year's tuition constitutes a reasonable liquidated sum for breach of a school enrollment contract); Wentworth Military Academy v. Marshall 225 Ark. 591, 283 S.W.2d 868 (1955) (same); Kentucky Military Institute v. Bramblet 158 Ky. 205, 164 S.W. 808 (1914) (same); Teeter v. Horner Military School 165 N.C. 564, 81 S.E. 767 (1914) (same).
The actual damages resulting from breach would have been very difficult to estimate at the time of contracting as well. The Barrie School's Chief Financial Officer testified to this effect before the District Court, stating as follows:
"The budget's developed in November and December of the preceding year, and reviewed and approved in January of the preceding year. We determine the total number of expenses, faculty and otherwise, to instruct our students, and we then, because we're a non-profit and we try to have a balanced budget, we then determine what tuition level needs to be set, and the number of students to meet the revenue goal. So to parse out of that the effect of one student is very difficult."
As the Circuit Court noted, "it would be next to impossible to assign an exact amount as to the impact of losing one child for the school year." Section 3 of the Agreement constitutes a valid liquidated damages clause.
Respondents argue that there exists a duty to mitigate damages even in the face of a valid liquidated damages clause. Respondents would have us hold that there is such a duty because parties to a contract are required usually to minimize loss in the event of breach. In Circuit City v. Rockville Pike, 376 Md. 331, 829 A.2d 976 (2003), we addressed the concept of mitigation of damages, stating as follows:
"We have recognized generally that, when one party breaches a contract, the other party is required by the `avoidable consequences' rule of damages to make all reasonable efforts to minimize the loss sustained from the breach and can charge the defending party only with such damages as, `with reasonable endeavors and expense and without risk of additional substantial loss or injury, he could not prevent.'"
Id. at 355, 829 A.2d at 990 (quoting Sergeant Co. v. Pickett, 285 Md. 186, 203, 401 A.2d 651, 660 (1979)). As we made clear in Circuit City, mitigation of damages helps *392 to determine the proper amount of damages resulting from a breach of contract. In other words, it is part of the law of court-assessed damages.
Liquidated damages differ fundamentally from mitigation of damages. While mitigation is part of a court's determination of actual damages that have resulted from a breach of contract, liquidated damages clauses are the remedy the parties to a contract have determined to be proper in the event of breach. Where the parties to a contract have included a reasonable sum that stipulates damages in the event of breach, that sum replaces any determination of actual loss. Professor Williston has explained this principle as follows:
"[O]ne purpose of a liquidated damages provision is to obviate the need for the nonbreaching party to prove actual damages. Thus, where the liquidated damages clause represents a reasonable attempt by the parties to agree in advance upon a sum that will compensate the nonbreacher for any harm caused by the breach, in lieu of the compensatory contract damage to which the nonbreacher would otherwise be entitled, the clause will be upheld."
LORD, supra § 65:1, at 230 (internal citations and quotations omitted). See also 11 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 1062, at 307 (interim ed.2002) (stating that a valid liquidation of damages makes other proof as to the amount of injury unnecessary). It follows naturally that once a court has determined that a liquidated damages clause is valid, it need not make further inquiries as to actual damages. This includes a determination of whether the parties attempted to mitigate damages resulting from breach.
Judge Richard Posner of the United States Court of Appeals for the Seventh Circuit noted the distinction between liquidated damages and the duty to mitigate in Lake River Corp. v. Carborundum Co., 769 F.2d 1284 (7th Cir.1985). That case involved a shipping contract in which one party to the contract failed to fulfill the terms of the agreement after market prices shifted. Although the court found that the contractual clause at issue was invalid as a penalty, the court nonetheless explained the distinction between mitigation of damages and liquidated damages, stating as follows:
"[M]itigation of damages is a doctrine of the law of court-assessed damages, while the point of a liquidated-damages clause is to substitute party assessment; and that point is blunted, and the certainty that liquidated-damages clauses are designed to give the process of assessing damages impaired, if a defendant can force the plaintiff to take less than the damages specified in the clause, on the ground that the plaintiff could have avoided some of them."
Lake River Corp., 769 F.2d at 1291.
As Judge Posner noted in Lake River Corp., the purpose of § 3 of the Agreement would be "blunted" if The Barrie School were required to mitigate damages. The parties to the Agreement determined that a certain sum would be paid in order to avoid the necessity of determining actual damages that might have resulted from breach. As a necessary conclusion, § 3 of the Agreement was a comprehensive sum that eliminated the need to calculate actual losses, including any mitigation of damages that might have occurred. Maryland's approach to liquidated damages supports this conclusion, as we view such clauses as "binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact." Heister, 392 Md. at 156, 896 A.2d at 352 (emphasis added) (internal citations and quotations omitted). Because mitigation of damages is part of a post-breach calculation *393 of actual damages, in the absence of a statute mandating mitigation of damages, there exists no duty to mitigate damages where a valid liquidated damages clause exists.
Section 3 of the Agreement is a valid liquidated damages clause and not a penalty. Therefore, The Barrie School had no duty to mitigate damages and was entitled to the sum enumerated in § 3 of the Agreement.
Finally, in addition to arguing the duty to mitigate, respondents claim the defense of no-actual-harm. Respondents contend that because The Barrie School filled their daughter's space and actually enrolled more students than anticipated originally, the school suffered no harm from its breach of the Agreement. We reject this defense in this context. The same rationale we rely on in rejecting the duty to mitigate in the face of a valid liquidated damages provision applies to the no-actual-harm defense. Such a defense negates the benefit of an agreed-upon or stipulated damages clause and deviates from our acceptance of the principle that the time of contract formation is the appropriate point from which to judge the reasonableness of a stipulated amount of damages. It would also breed uncertainty in the calculation of damages, because if we were to accept the no-actual-harm defense, why would courts not then give greater damages than contemplated when the damages actually exceeded the stipulated amount?
Courts around the country have addressed similar fact patterns and many have held that there is no duty to mitigate damages under these circumstances. See, e.g., Lake Ridge Academy, 66 Ohio St.3d 376, 613 N.E.2d 183; Wentworth Military Academy, 225 Ark. 591, 283 S.W.2d 868; Kentucky Military Institute, 158 Ky. 205, 164 S.W. 808; Horner Military School, 165 N.C. 564, 81 S.E. 767. In Lake Ridge Academy v. Carney, 66 Ohio St.3d 376, 613 N.E.2d 183, the Ohio Supreme Court considered whether a private school was entitled to a full year's tuition, as stipulated within the enrollment contract, when the parent cancelled the contract after the agreed deadline. The court held that the parent had breached the contract and that the school was entitled to the full tuition as agreed upon in the contract. It noted that when the contract was formed, the damages that the school might suffer as a result of a breach by the parent were "uncertain as to amount and difficult of proof." Id. at 188 (citation omitted). The court noted that the school goes through a long budgeting process, beginning in January and ending in the fall. The tuition money was pooled and went toward running the school, paying for such things as staff salaries and benefits, department budgets, student materials, maintenance, improvements, and utilities. The evidence presented at trial revealed that the school budget process is often an uncertain science and that the school would be unable to calculate and prove the precise damages caused by the loss of one student's tuition.
The court in Lake Ridge Academy concluded that the stipulated damages in the enrollment contract constituted a valid liquidated damages clause and that the contract was not one of adhesion. Accordingly, the court rejected the parents' argument that the school had a duty to mitigate its damages after it received notice of cancellation, noting as follows:
"A valid liquidated damages clause contemplates the nonbreaching party's inability to identify and mitigate its damages. If damages are `uncertain as to amount and difficult of proof,' as they must be, the nonbreacher cannot be expected to reduce them after a breach. As a matter of law, because the liquidated damages clause is valid, Lake *394 Ridge did not have a duty to mitigate its damages following Carney's breach."
Id. at 190.

IV.
We address respondents' remaining contentions. Respondents argue that the Agreement was a contract of adhesion because it specified, in bold, capital letters that "ANY ALTERATIONS OR MODIFICATIONS TO THIS AGREEMENT WILL NOT BE ACCEPTED BY THE SCHOOL." Respondents reason that because there was a gross inequity of bargaining power and The Barrie School imposed a liquidated damages provision in the Agreement, the provision was unenforceable. Both lower courts found that the Agreement was not a contract of adhesion. We agree with the lower courts.
We note that a contract of adhesion is not void per se. Walther v. Sovereign Bank, 386 Md. 412, 430, 872 A.2d 735, 746 (2005). A court will find a contract of adhesion unenforceable only if it is unconscionable. Id. In the instant case, the Agreement was neither a contract of adhesion nor unconscionable. An unconscionable contract involves extreme unfairness, "made evident by (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party." Id. at 426, 872 A.2d at 743 (internal citations and quotations omitted). Respondents were not forced to enroll their child at The Barrie School. Moreover, the "escape clause" was put into the Agreement for the benefit of respondents. If respondents did not want to enroll their child at the school, all they needed to do was to notify school officials before May 31, 2004, and they would have incurred no financial liability. But for that provision respondents would have been bound to the Agreement without any opportunity for a refund. Respondents have not established that they had no choice but to enroll their child at The Barrie School, and the record does not suggest that the Agreement was anything but an arm's-length business transaction. Therefore, we conclude that the District Court did not err in concluding that the Agreement was not a contract of adhesion.
Respondents contend also that they were induced to enter into the Agreement because of fraud on the part of The Barrie School. To prove fraud or deceit, a plaintiff must demonstrate that a false representation was made knowingly or recklessly, and that the misrepresentation was made for the purpose of defrauding. Ellerin v. Fairfax Savings, F.S.B., 337 Md. 216, 229, 652 A.2d 1117, 1123 (1995). The plaintiff must demonstrate further that he or she relied on the misrepresentation of the defendant and suffered a compensable injury. Id.
Maryland Rule 8-131(c) makes clear that, where an action is tried without a jury, an appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." The District Court judge concluded that there was no fraud in the inducement, stating as follows:
"I find that the contract that was entered into between the Patch's and Barrie School was a valid contract. I don't find that there was any fraudulent behavior on the part of people at The Barrie School. There may have been some misinformation passed along, may have beenat best it was misinformation. It was not intended to sucker or deceive."
The finding of the trial court is not clearly erroneous. The District Court judge was in the best position to judge the credibility *395 of the witnesses, weigh the evidence, and make factual determinations. We will not disturb those findings.
Finally, respondents contend that the District Court abused its discretion in denying certain portions of their discovery requests. It is well settled in Maryland that trial judges are vested with broad discretion with respect to discovery matters, and that discovery rulings will not be disturbed in the absence of an abuse of discretion. See Ehrlich v. Grove, 396 Md. 550, 560, 914 A.2d 783, 790 (2007). The District Court determined that portions of respondents' discovery requests were overly broad. Nothing in the record would lead us to conclude that the District Court's determination on this matter constituted an abuse of discretion. The District Court committed no error in denying portions of respondents' discovery requests.
JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE DISTRICT COURT TO RENDER JUDGMENT CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE CIRCUIT COURT TO BE PAID BY RESPONDENTS.
BELL, C.J., Dissents.
BELL, C.J.
The Majority, agreeing that the liquidated damages clause embodied in § 3 of the re-enrollment agreement ("the Agreement") between the appellant, The Barrie School ("the School"), and the appellees, Mr. and Mrs. Patch ("the Patches"), and on which the trial courts relied, is valid, reverses the judgment of the Circuit Court for Montgomery County because it concludes that where the liquidated damages clause is valid, there is no duty to mitigate. Barrie School v. Patch, 401 Md. 497, 512-13, 933 A.2d 382, 391-92 (2007). I disagree. I am troubled by the result reached by the Majority, as it undermines basic principles of contract law pertaining to the equity and reasonableness of contract remedies.
It is a long-held, and well-settled, general principle of contract law that contract remedies are to be compensatory, not punitive. Restatement (Second) of Contracts § 356, comment a (1981) (stating that "the central objective behind the system of contract remedies is compensatory, not punitive"). See 24 Richard A. Lord, Williston On Contracts § 65:1, pp. 213-15 (4th ed.2002) (noting that agreements pertaining to "the amount of damages recoverable . . . will generally [be] enforced . . . so long as the amount is not unconscionable, is not determined to be an illegal penalty, and is not otherwise violative of public policy."); 11 Joseph M. Perillo, Corbin on Contracts, § 58.1, p. 396 (2006) (recognizing "the traditional equitable doctrine of unconscionability . . . as a foundation for the rule against the enforcement of contractual penalties"). Liquidated damages provisions are not immune to this general rule. John Cowan, Inc. v. Meyer, 125 Md. 450, 462-63, 94 A. 18, 21 (1915). See 8 Maryland Law Encyclopedia, Damages § 51, pp. 104-105 (2001) ("In determining the scope of a provision in a contract for liquidated damages, it will be interpreted according to the rules applicable to contracts generally").
This Court has defined liquidated damages as a "specific sum of money . . . expressly stipulated by the parties to a . . . contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." Traylor v. Grafton, 273 Md. 649, 661, 332 A.2d 651, 660 (1975), citing Massachusetts Indem. *396 Life Ins. Co. v. Dresser, 269 Md. 364, 368, 306 A.2d 213, 216 (1973); Board of Education of Talbot County v. Heister, 392 Md. 140, 156, 896 A.2d 342, 352 (2006). More particularly, we have held that a liquidated damages clause is "an agree[d] upon and name[d] sum . . . in lieu of anticipated damages which are in their nature uncertain and incapable of exact ascertainment." Baltimore Bridge Co. v. United Railways & Electric Co., 125 Md. 208, 214, 93 A. 420, 422 (1915). Accord Anne Arundel County v. Norair Eng'g Corp., 275 Md. 480, 492, 341 A.2d 287, 293 (1975). Accord United Cable Television of Baltimore Ltd. v. Burch, 354 Md. 658, 674, 732 A.2d 887, 896 (1999). Such a clause will be upheld "unless the amount so agreed upon and inserted in the agreement be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such a breach of contract." Id.[1] Furthermore, "the surrounding facts and circumstances connected therewith with which the parties are confronted at the time of [a contract's] execution" should be considered "in order to ascertain the intention of the parties, which is one of the essential factors in deciding whether the stipulation is for liquidated damages or is a penalty." Id.
Thus, the purpose of a liquidated damages clause is to establish a fixed sum as the amount of damages for a breach of contract as to which damages cannot be ascertained easily. It does not follow, however, that merely because a contract contains a liquidated damages clause, which facially is not punitive, upon breach, damages in the amount stipulated automatically will be awarded to the non-breaching party. Even the Majority recognizes and correctly points out, "that one of the most difficult and perplexing inquiries encountered in the construction of written agreements is determining whether a contractual clause should be regarded as a valid and enforceable liquidated damages provision or as a penalty[,] . . . and that if there is doubt whether a contract provides for a liquidated damages or penalty, the provision will be construed as a penalty." 401 Md. at 510, 933 A.2d at 390 (internal quotations and citations omitted). Before there will be an award of liquidated damages, then, it must be determined whether the clause is valid.
Integral to the inquiry into the validity of a liquidated damages clause is determining whether the clause is fair and reasonable. The vantage point from which that determination is made is critical to, and may be dispositive of, that inquiry. The Majority maintains that "the time of the contract formation is the appropriate point from which to judge the reasonableness of *397 a liquidated damages provision." 401 Md. 497, 509, 933 A.2d 382, 389. Focusing exclusively on this "prospective view"[2] leads the Majority to the conclusion it reaches.
There is another "view," however. Because the validity of a liquidated damages does not become an issue until one of the parties breaches the contract to which it relates, it follows, logically, that the review of a liquidated damages clause to determine whether it is a penalty should include the effect of the breach, at the least, whether actual damage have been incurred. Commenting on this "retrospective view," the first Restatement of Contracts noted:
"If the parties [to an agreement] honestly but mistakenly suppose that a breach will cause harm that will be incapable or very difficult of accurate estimation, when in fact the breach causes no harm at all or none that is incapable of accurate estimation without difficulty, their advance agreement fixing the amount to be paid as damages for the breach . . . is not enforceable."
§ 339 at comment e (emphasis added). The second Restatement is to like effect, stating:
"[T]wo factors combine in determining whether an amount of money fixed as damages is so unreasonably large as to be a penalty. The first factor is the anticipated or actual loss caused by the breach. . . . The second factor is the difficulty of proof of loss. . . . If the difficulty of proof of loss is great, considerable latitude is allowed in that approximation of anticipated or actual harm. If, on the other hand, the difficulty of proof of loss is slight, less latitude if allowed in that approximation. If, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable."
§ 356 at comment b (emphasis added). See Mattingly Bridge Co., Inc. v. Holloway & Son Const. Co., 694 S.W.2d 702, 705 (Ky.1985), in which the Supreme Court of Kentucky, adopting Restatement (Second) Contracts § 356(1) (1981) "as a reasonable expression of the rule applicable to liquidated damages"[3] acknowledged *398 that liquidated damages clauses are "useful commercial tool[s] to avoid litigation to determine actual damages," subject, however, to two restrictions: "they should be used only (1) where the actual damages sustained from a breach of contract would be very difficult to ascertain and (2) where, after the breach occurs, it appears that the amount fixed as liquidated damages is not grossly disproportionate to the damages actually sustained." (emphasis added). As articulated further by Professor Corbin:
"The probable injury that the parties had reason to foresee is a fact that largely determines the question whether they made a genuine pre-estimate of that injury, but the justice and equity of enforcement depend also upon the amount of injury that has actually occurred. . . . It is to be observed that hindsight is frequently better than foresight, and that, in passing judgment upon the honesty and genuineness of the pre-estimate made by the parties, the court cannot help but be influenced by its knowledge of subsequent events."
Corbin on Contracts, Vol. 11, § 58.11 at pp. 457-58 (emphasis added).
The viability of a liquidated damages clause, thus, does not depend solely on the fixed amount for which the parties contracted; rather, all of the surrounding circumstances are important, those existing at the time of contracting, as well as those existing at the time of the breach, and they include consideration of the actual damages sustained. See Baybank Middlesex v. 1200 Beacon Props., Inc., 760 F.Supp. 957, 964 (D.Mass.1991) ("In order to determine whether the liquidated damages provision is valid, this Court must examine the reasonableness of the liquidated damages provision, both retrospectively, and at the time the parties agreed to it.") (emphasis added); Independent Sch. Dist. v. Dudley, 195 Iowa 398, 192 N.W. 261, 263 (Iowa 1923) ("[T]he tendency of the courts in recent years has been to look into all the circumstances and give effect to such an agreement only so far as equity and good conscience will permit, and if the sum stipulated is out of reasonable proportion to the loss or injury actually sustained . . . it will be treated as a penalty only."); Lake Ridge Academy v. Carney, 66 Ohio St.3d 376, 613 N.E.2d 183, 188 (1993) ("[W]hen a stipulated damages provision is challenged, the court must step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach.") (emphasis added). This is, in my view, the only way in which to be completely fair to both parties.
In the case sub judice, there is no doubt that the Patches breached their Agreement with the School. On the other hand, the record indicates that the School did not suffer harm commensurate to the sum fixed as liquidated damages. While the Patches' daughter did not attend the School, it is undisputed that the School met its enrollment projections for that year; there was "no empty desk" for which budgetary projections were made, yet not realized.[4] Looking at the provision *399 retrospectively, it is clear that the School should not be awarded a full year's tuition, as this amount is grossly disproportionate to, and in excess of, the harm it actually suffered. See In re Dow Corning Corp., 419 F.3d 543, 549-50 (6th Cir.2005) (stating that "if the liquidated damages are disproportionate to actual damages, the [liquidated damages] clause will not be enforced and recovery will be limited to the actual damages proven"); Northwest Fixture Co. v. Kilbourne & Clark Co., 128 F. 256, 261 (9th Cir.1904) (noting that "where the sum named in the contract to be paid on a breach thereof is evidently wholly disproportionate to the damage actually sustained, or where it is shown that no actual damage has been sustained by the breach, the courts will deem the parties to have intended to stipulate for a mere penalty to secure performance."); Days Inns Worldwide v. Mandir, Inc., 393 F.Supp.2d 1240, 1249 (W.D.Okla.2005) (asserting that a "liquidated damages provision in a contract will be considered a penalty, and therefore unenforceable, if the amount provided for in the provision is `manifestly disproportionate' to the amount of actual damages suffered."); Wirth & Hamid Fair Booking v. Wirth, 265 N.Y. 214, 192 N.E. 297, 301 (1934) (stating that liquidated damages "must bear reasonable proportion to the actual loss").
This conclusion is not inconsistent with the holding in Lake Ridge Academy v. Carney, supra, on which the Majority relies. The Majority cites Lake Ridge for the proposition that "a year's tuition constitutes a reasonable liquidated sum for breach of a school enrollment contract." 401 Md. at 512, 933 A.2d at 391.[5] Moreover, it states that the liquidated damage amount "was a reasonable forecast of just compensation for potential harm caused by a breach of the Agreement. The damages contemplated in the Agreement were neither grossly excessive nor out of all proportion to those which might have been expected at the time of contracting." Id. While perhaps correct about the reasonableness of the School's estimate when the contract was executed,[6] the Majority does *400 not consider, or even take into account, the actual damages sustained by the School. See Shallow Brook Associates v. Dube, 135 N.H. 40, 599 A.2d 132, 137-38 (1991) (recognizing that a liquidated damages clause will not be enforced if the actual damages which occurs at the time of breach can easily be established and are substantially lower than the amount stipulated, even if the fixed sum was a reasonable estimate at the time of contract execution). See also, 24 Williston On Contracts § 65:17 at p. 304 ("[A] court may consider the damages actually sustained following the breach in evaluating the reasonableness of the estimate, reasoning that a substantial disparity between the amount agreed to as stipulated damages and the actual damages suffered may tend to show that the amount chosen was in fact unreasonable at the time of contracting.").
In Lake Ridge, premised on the fact that "the school budget process is often an uncertain science [and that] Lake Ridge would be unable to calculate and prove the precise damages caused by the loss of one student's tuition," 613 N.E.2d at 188-89, the Ohio Supreme Court held that "the parent had breached the contract and the school was entitled to the full tuition as agreed upon in the contract." 401 Md. 497, 515, 933 A.2d 382, 393. The Lake Ridge court elucidated:
"[T]he contract as a whole [is not] unreasonable. The headmaster testified that August 1 was chosen as the day before which notice of cancellation had to be given simply because the school had to know in order to meet its financial commitments. Carney had almost five months after he signed the contract to decide whether to cancel it. Because Lake Ridge's financial commitments became more firm as the school year approached, it is reasonable to assume that by August 1 the school was relying on Carney's full tuition payment.
"Finally, damages in the amount of the full tuition are not disproportionate to the actual damages suffered by Lake Ridge. Because by August 1 the Lake Ridge budget was nearly finalized and it assumed revenues which included Carney's full tuition, it is not unreasonable to conclude that Lake Ridge's actual damages were the equivalent of one full tuition. The headmaster testified that if Lake Ridge enjoyed any savings from Michael Carney's withdrawal, they were `minuscule.' While we cannot say that Lake Ridge's actual damages were exactly equivalent to full tuition, we can say with conviction that full tuition is not disproportionate to the school's actual damages."
613 N.E.2d at 189 (emphasis in original). In Lake Ridge, the court focused on the actual damages the school suffered, in addition to the prospective damages on which the parties agreed as of the time of making the contract. Although it found the liquidated damages clause to be valid and, thus, compelled the parents to pay the agreed year's tuition, it did so because the school, in the court's view, suffered damages proportionate to the stipulated damages.
In the case sub judice, on the other hand and as stated earlier, the School had already met its enrollment projections when the 2004-2005 school year commenced. Thus, it logically follows, and in the instant case there is no evidence to the contrary,[7] that the School, unlike Lake *401 Ridge Academy, was not "relying" on, in the same way that Lake Ridge Academy was, the Patches' tuition payment for any of its financial commitments.
Moreover, unlike the withdrawal of the student in Lake Ridge, which was just a week before commencement of the term, albeit after the specified deadline, the Patches withdrew their daughter five weeks prior to the beginning of the school term. Whether this difference matters really is the question that must be answered. To answer that question, we, like the Lake Ridge court, must examine the actual damages suffered by the School. When that is done, it is my opinion that this Court simply will not be able to say, with conviction, that the "liquidated damages," the stipulated sum of a full year's tuition, is in proportion to the actual damages suffered by the School. Indeed, the facts found by the District Court indicate that the School was not harmed by the Patches' late withdrawal of their daughter. Therefore, I believe that giving the School the relief it seeks would result in a windfall for it, i.e., the School would be doubly compensated. See JKC Holding Co. v. Washington Sports Ventures, Inc., 264 F.3d 459, 468 (4th Cir.2001) ("Liquidated damages provisions are based on the principle of just compensation and may not be used to reap a windfall or to secure performance by the compulsion of disproportion.") (citation omitted); Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1290 (7th Cir.1985) (where damage formula was designed always to assure nonbreaching party more than its actual damages, the court, calling the effect of the clause "a huge windfall," found the clause to be a penalty, rather than a liquidation of damages). See also Priebe & Sons v. U.S., 332 U.S. 407, 418, 68 S.Ct. 123, 129, 92 L.Ed. 32 (1947) (Frankfurter, J., dissenting) ("The essence of the law's remedy for breach of contract is that he who has suffered from a breach should be duly compensated for the loss incurred by nonperformance. But one man's default should not lead to another man's unjust enrichment."). See e.g. Northwest Fixture Co. v. Kilbourne & Clark Co., 128 F. at 261 (stating that "no provision in a contract for the payment of a fixed sum as damages, whether stipulated for as a penalty or as liquidated damages, will be enforced in a case where the court can see that no damages have been sustained"); Norwalk Door Closer Co. v. Eagle Lock & Screw Co., 153 Conn. 681, 220 A.2d 263, 268 (1966), quoting The Colombia, 197 F. 661, 664 (S.D.Ala.1912) (same): Wood v. Niagara Falls Paper Co., 121 F. 818, 819(2d Cir.1903) (noting that "when it is made to appear in an action for [a] breach that no actual damages have arisen, notwithstanding the parties have agreed upon stipulated damages, the party in default is entitled to be relieved"); Radloff v. Haase, 196 Ill. 365, 63 N.E. 729, 730 (1902) (holding that, when the plaintiff suffered no injury, the stipulated damages are a penalty, not liquidated damages); Crawford v. Allen, 189 N.C. 434, 127 S.E. 521, 525 (1925) (stating that "[a] court of equity, which does not favor forfeitures, and will not enforce penalties, but seeks to do justice in accordance with the rights of both parties, as determined by an enlightened conscience, *402 will not be swift to sustain an undertaking to pay liquidated damages, where there has been no injury and no loss.").
The Majority rejects "no-actual-harm" as a defense. It argues that "[s]uch a defense negates the benefit of an agreed-upon or stipulated damages clause[.]" 401 Md. 497, 515, 933 A.2d 382, 393. The Majority also believes that "[i]t would also breed uncertainty in the calculation of damages, because if we were to accept the no-actual-harm defense, why would courts not then give greater damages than contemplated when the damages actually exceeded the stipulated amount?" Id. This view is not supported by the precedent on which the Majority itself relies. In Baltimore Bridge, this Court opined:
"It may afterwards be disclosed that the damages actually sustained are more or less than those anticipated at the time of the execution of the contract. If less, this fact would not characterize or stamp the stipulation as a penalty unless it was so exorbitant as to clearly show that such amount was not aimed at in a bona fide effort, made at or before the execution of the contract, to estimate the damages that might have been reasonably expected to result from a breach of it, and that it was named as a penalty for such breach. And, on the other hand, if the amount stipulated was found to be inadequate, a greater amount could not be recovered for such breach, because of the agreement between the parties that the amount so named should be in lieu of the damages resulting therefrom."
125 Md. at 215, 93 A. at 422-23. This is consistent with my position and with principles of fairness and equity; liquidated damages clauses limit recovery where the actual damages suffered are greater, while yet allowing exorbitant, excessive sums to be challenged. This is not at all contrary to the purpose of such clauses.
To be sure, the School is entitled to compensation for any and all damages it suffered as a result of the contract breach. When, however, considered retrospectively, it is determined that the School's recovery will be excessive, the liquidated damages clause that provides for that recovery is invalid and unenforceable. That simply means that the School will have to prove its actual damages as it would in any breach of contract action and will be required, moreover, to mitigate its damages, if the circumstances make that appropriate.
The purpose of imposing a duty to mitigate damages is to "encourag[e] the injured party to attempt to avoid loss." Restatement (Second) of Contracts § 350 at comment a. This Court has held, in accordance with this general "avoidable consequences" rule of damages, that "the ordinary rule with respect to minimization of damages . . . [is] that `damages are not recoverable if the consequences of a breach are avoidable. In other words, a plaintiff is not entitled to a judgment for damages for a loss that he could have avoided by a reasonable effort without risk of additional loss or injury.'" Sergeant Co. v. Pickett, 285 Md. 186, 191-92, 401 A.2d 651, 654 (1979) quoting M & R Contractors & Builders v. Michael, 215 Md. 340, 354-55, 138 A.2d 350, 358 (1958); Circuit City Stores, Inc. v. Rockville Pike Joint Venture Ltd. Partnership, 376 Md. 331, 355-56, 829 A.2d 976, 990 (2003).
I am aware of the relationship between the mitigation of damages and liquidated damages clauses, and, indeed, do not dispute that, as the Majority notes, "[l]iquidated damages differ fundamentally from mitigation of damages." 401 Md. at 513, 933 A.2d at 392. As to "the difference" *403 between these two concepts, the Majority states:
"While mitigation is part of a court's determination of actual damages that have resulted from a breach of contract, liquidated damages is the remedy the parties to a contract have determined to be proper in the event of a breach. Where the parties to a contract have included a reasonable sum that stipulates damages in the event of breach, that sum replaces any determination of actual loss. . . . It follows naturally that once a court has determined that a liquidated damages clause is valid, it need not make further inquiries as to actual damages. This includes a determination of whether the parties attempted to mitigate damages resulting from breach."
Id. (Internal quotations and citations omitted) (emphasis added). Thus, relying on Lake River Corp. v. Carborundum Co., 769 F.2d 1284 (7th Cir.1985), it reasons, relevant to the case sub judice:
"[T]he purpose of § 3 of the Agreement would be blunted if The Barrie School were required to mitigate damages. The parties to the contract determined that a certain sum would be paid in order to avoid the necessity of determining actual damages that might have resulted from breach. As a necessary conclusion, § 3 of the Agreement was a comprehensive sum that eliminated the need to calculate actual losses, including any mitigation of damages that might have occurred. . . . Because mitigation of damages is part of a post-breach calculation of actual damages, in the absence of [a] statute mandating mitigation of damages, there exists no duty to mitigate damages where a valid liquidation damages clause exists."
401 Md. at 513-14, 933 A.2d at 392 (internal quotations and citations omitted).
I do not agree. The liquidation of damages and the mitigation of damages are, indeed, distinct and separate concepts, which must be treated as such, i.e., there is no exception to the general contractual duty to mitigate simply because a fixed sum has been agreed upon by the parties in advance. That is to say, whether mitigation of damages applies, or not, should be determined when, post-breach, a court considers whether there have been actual damages incurred at all.[8]
*404 I do not disagree with the proposition, offered by the Majority, that once a clause is determined to be valid, no inquiry should be made into whether mitigation is appropriate, reasonable. It is the process of making the validity determination that is problematic. It is my position that, in order to determine that the clause is, in fact, valid, it must be examined in context, both at the time of contracting and at the time of trial, after the breach has occurred. If the clause is upheld as valid, i.e., not disproportionate or excessive to the actual damages sustained, then the breaching party may not challenge, or seek to reduce, the amount of damages due to the non-breaching party; however, if the clause is determined to be punitive, then mitigation, as a separate concept, must be considered. This is not contrary to the view that:
"[w]hen the parties have made a reasonable forecast as to the just compensation for an injury that later in fact occurs and that is very difficult to estimate accurately, the defendant should never be allowed to introduce evidence the purpose of which is to substitute the estimate of a jury for the prior reasonable estimate of the parties. But the defendant should be allowed to show that there has in fact been no injury at all, or that the injury is not the one that the parties in fact estimated in advance."
Corbin on Contracts, Vol. 11, § 58.1 at p. 463. See O'Brian v. Langley, 256 Va. 547, 507 S.E.2d 363, 365 (1998) (holding that a "party opposing the imposition of liquidated damages is entitled to conduct discovery and present relevant evidence that the damages resulting from breach of the contract are susceptible of definite measurement or that the stipulated damages are grossly in excess of the actual damages suffered by the nonbreaching party. Upon proof of either of these elements, a liquidated damages clause becomes an unenforceable penalty.") (citation omitted). Thus, viewing a liquidated damages provision in retrospect, the non-breaching party's failure to mitigate renders the clause a penalty and, thus, invalid. The clause is likewise invalid where the non-breaching party's damages, in effect, have been because not excessive, or exorbitantmitigated. That arguably is the situation in the instant matter.
As stated earlier, a liquidated damages clause should not be enforced simply because it exists. See American Car Rental, Inc. v. Comm'r of Consumer Prot., 273 Conn. 296, 869 A.2d 1198, 1209-10 (2005) (noting that "[t]he mere fact that expected damages resulting from breach are uncertain in amount or difficult to prove does not justify enforcement of whatever amount the contract includes as damages for breach[.]"); O'Brian, 507 S.E.2d at 365 (stating that "[t]he fact that a party enters into a contract containing a liquidated damages clause does not prevent that party from later litigating the validity of the clause."). Efforts to mitigate damages should be made when it is reasonable to do so. Similarly, where the non-breaching party has suffered no damages, or relatively insignificant damages in comparison to the stipulated sum, due to the breach, or has taken steps that mitigated the damages, that fact must be taken into account. See, e.g., Perez v. Aerospace Academy, Inc., 546 So.2d 1139, 1141 (Fla.App.1989) (stating that "where the school actually fills the place of the absent student, the *405 school's damages will be mitigated to the extent of the new student's payments. To conclude otherwise would create a dual recovery for the school and a penalty to the parent[. . . . Thus,] insofar as the liquidated damages clause fails to provide credit for sums received from a replacement student (if any), the clause operates as a penalty."). I do not agree, in short, contrary to the Majority's view, that a liquidated damages clause automatically eliminates the need to calculate actual losses and, as required, to consider mitigation.
To uphold the liquidated damages clause in the case sub judice would be unfair to the Patches. General contract principles make that clear. I would affirm the judgment of the Circuit Court.
For the foregoing reasons, I dissent.
NOTES
[*] Wilner and Cathell, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.
[1] Based on the record from the District Court proceedings, it appears that respondents abandoned this final claim.
[2] Maryland Rule 7-101 et seq., authorizes appeals from the District Court to the Circuit Court. Rule 7-102(b)(1) provides, in pertinent part, as follows:

"(b) On the record. An appeal shall be heard on the record made in the District Court in the following cases:
(1) a civil action in which the amount in controversy exceeds $5,000 exclusive of interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract. . . . "
[3] Because we find that The Barrie School had no duty to mitigate damages, we do not address this argument.
[4] Respondents did not raise the issue of negligent misrepresentation before the District Court, and for this reason, we do not address the claim here. See Maryland Rule 8-131(a) (stating that "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court").
[5] For statutory provisions providing otherwise, see, for example, the Uniform Commercial Code § 2-718(1) and the corresponding Maryland provision applying to the sale of goods, Md.Code (1975, 2002 Repl.Vol.), § 2-718(1) of the Commercial Law Article (stating that damages "may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach"), Md.Code (1975, 2005 Repl.Vol.), § 14-1106(c) of the Commercial Law Article (noting that under Maryland's laws governing layaway sales, the seller may "retain as liquidated damages an amount not to exceed 10 percent of the layaway price or the total amount paid by the buyer to the date of default, whichever is less"), Md.Code (1975, 2005 Repl.Vol.), § 22-804(a) of the Commercial Law Article (noting that under the Maryland Uniform Computer Information Act, damages for breach of contract may be liquidated by either party in an amount that is reasonable in light of anticipated loss, actual loss, or actual or anticipated difficulties of proving loss in the event of breach), and Md. Code (1973, 2006 Repl.Vol.), § 10-410(a)(1) of the Courts and Judicial Proceedings Article (noting that any person whose wire, oral, or electronic communications are used in violation of that subtitle is entitled to "[a]ctual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher").
[6] We do not address the enforceability of specific contractual provisions related to liability for school tuition and related charges in the event of nonattendance under circumstances related to serious illness, military transfers, and the like.
[1] The Majority articulates the rule of liquidated damages as follows:

"There are three essential elements of a valid and enforceable liquidated damages clause. First, the clause must provide in clear and unambiguous terms for a certain sum. Secondly, the liquidated damages must reasonably be compensation for the damages anticipated by the breach. Thirdly, liquidated damages clauses are by their nature mandatory binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact."
401 Md. at 509, 933 A.2d at 389, quoting Board of Education of Talbot County v. Heister, 392 Md. 140, 156, 896 A.2d 342, 352 (2006) (emphasis added).
In Heister, we went on to state that, rather than the language of the clause, "the decisive element is the intention of the parties," which is "to be gleaned from the subject matter, the language of the contract and the circumstances surrounding its execution." Id. As will be seen, while I do not deny that the intention of the parties on the question is important, I do not agree that it is decisive. The effect of the clause is, in my view, just as, if not more, important.
[2] Addressing the issue of when a liquidated damages clause will be deemed invalid, the Majority quotes WILLISTON ON CONTRACTS:

"[A] liquidated damages provision will be held to violate public policy, and hence will not be enforced, when it is intended to punish, or has the effect of punishing, a party for breaching the contract, or when there is a large disparity between the amount plausible under the provision and the actual damages likely to be caused by a breach; so that it in effect seeks to coerce performance of the underlying agreement by penalizing non-performance and making a breach prohibitively and unreasonably costly."
401 Md. 497, 510, 933 A.2d 382, 390 (quoting 24 WILLISTON ON CONTRACTS § 65:1, p. 215 (4th ed.2002)). By acknowledging that "effect" may render a clause invalid, Williston arguably also acknowledges the "retrospective view." The Majority nevertheless does not address it in its reasoning.
[3] Restatement (Second) Contracts § 356(1) (1981) provided:

"Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."
The court defined "anticipated and actual loss," as used in the Restatement, stating
"`Anticipated loss' refers to the time of the making of the contract. `Actual loss' refers to the circumstances upon occasion of the breach. These are two prongs, which apply alternately. If the award of liquidated damages exceeds any reasonable limitation by either one or the other, to such extent it is unenforceable."
Mattingly Bridge Co., Inc. v. Holloway & Son Const. Co., 694 S.W.2d 702, 705 (Ky.1985) (emphasis added).
[4] The School maintains that there was no empty "kindergarten" seat, and, thus, that the Patches' daughter was not replaced. This argument is not helpful to the School. The fact that there was no empty desk in the section in which the Patches' daughter was to be enrolled did not change the overall enrollment of the School, which both parties agreed met, and even exceeded, budgetary expectations. On this issue, the District Court found that "[t]he Barrie School [had] already enrolled more students than its budget projections called for." It is, thus, logical to expect that the overall enrollment projections would determine whether the School was damaged, i.e. actually lost money, due to the Patches' withdrawal of their daughter, not whether the number of a specific section or class projection was realized.
[5] Other cases cited by the Majority for this proposition, see 401 Md. at 512, 933 A.2d at 391, are distinguishable. Those cases involve students who have been either expelled or left school voluntarily. Those students, thus, all attended their subject respective institutions during the term. Therefore, the schools had allotted resources for those students, and presumably relied on their tuition payments.

In Wentworth Military Academy v. Marshall, the court reasoned:
"`In several cases the right of a school to recover the full annual tuition charge when the pupil was expelled for proper cause, or left without reason before the close of the year has been allowed. The only justification for this can be the fact, if it is a fact, that one less pupil involves no saving of expense to the school.'"
225 Ark. 591, 283 S.W.2d 868, 870 (1955), quoting Williston on Contracts, Vol. 5, § 1352 (1937) (emphasis added). The Wentworth Court followed the "retrospective view," noting that the standard of looking for a "savings," would be impossible without taking into consideration the actual damages that may, or may not, have been incurred.
[6] What the School knew when the contract was executed is not particularly clear from the record; there is conflicting evidence pertaining to the precise moment at which the School was aware that its budgetary projections were met. For that reason, I agree with the District Court that there was "no fraudulent behavior on the part of the people at The Barrie School[;]" however, to the extent that it is possible that the School already knew that its budgetary projections had been met when it contracted with the Patches, would further illustrate that one year's tuition is not only disproportionate to its actual damages, but that this sum was excessive at the time of contracting and was intended to be a penalty, rather than a valid estimation of the sum of the School's anticipated damages.
[7] As mentioned earlier, the School relies on the theory that there was "an empty seat" in the kindergarten class and the fact that the clause should be upheld because of the uncertainty of its budgeting process. The record, however, is devoid of any proof that the School actually suffered harm as a result of the Patches' withdrawal of their daughter. And, although the Circuit Court may have been correct in concluding that "it would be next to impossible to assign an exact amount as to the impact of losing one child for the school year[,]" if, or once, the enrollment projections for the School were met, whether or not an "empty seat" in a particular class was, in fact, filled, the provision became a penalty to the Patches.
[8] It is important to note that the language from Lake River, relied upon by the Majority, is taken out of context. In that case, holding that it was necessary to refigure each party's damages, the court found the liquidated damages clause, which was based on a "formula" that would invariably result in a disproportionate award of damages to the non-breaching party, to be a penalty. The mitigation of damages argument about which the Lake River court spoke, was aimed at validating the liquidated damages clause; it was an attempt by the non-breaching party to justify the liquidated damages clause itself. The non-breaching party, Lake River Corp., urged the court to uphold the clause as valid, arguing that, because it was required by general contract principles to mitigate its damages in the event of a breach, the "formula" would never result in the foreseen excessive amount. Lake River was, in effect, attempting to minimize the windfall which it knew it was getting by virtue of its damages formula.

On the issue, and directly following the excerpt upon which the Majority relies, the court commented:
"It would seem therefore that the clause in this case should be read to eliminate any duty of mitigation, that what Lake River is doing is attempting to rewrite the clause to make it more reasonable, and that since actually the clause is designed to give Lake River the full damages it would incur from breach (and more) even if it made no effort to find a substitute use for the equipment that it bought to perform the contract, this is just one more piece of evidence that it is a penalty clause rather than a liquidated clause."
Lake River, 769 F.2d at 1291. Thus, the Lake River court was not, as the Majority posits, rejecting mitigation as a factor to be considered when determining whether such a clause is valid. It is evident, moreover, that the Lake River court employed the retrospective view in its analysis.